**Frank P. DOMERACKI, Plaintiff,**

v.

**GULF OIL CORPORATION, Defendant.**

**Civ. A. No. 25362.**

United States District Court
E. D. Pennsylvania.
Feb. 15, 1962.

Sidney J. Smolinsky, Bernard Sacks, of Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., for plaintiff.

Timothy J. Mahoney, of Krusen, Evans and Byrne, Philadelphia, Pa., for defendant.

FREEDMAN, District Judge.

Plaintiff seeks a new trial in this action brought under the Jones Act (46 U.S.C.A. § 688). The grounds assigned are that the verdict was against the evidence, against the weight of the evidence, and that the charge of the court was erroneous.

Plaintiff sued for personal injuries which he alleges he sustained on the defendant's tanker, S.S. Gulflion. He claims that he fell out of his bunk because its guard rail was so low or the mattress on it was so high that the guard rail gave him no adequate protection.

The testimony as to the accident came from the plaintiff and his cabin mate, Mr. Lavin. Plaintiff fell out of his bunk twice. The first time he was rendered unconscious, but Mr. Lavin revived him and helped him up to the bunk, where he fell asleep again. Because of his condition plaintiff himself knew nothing of this event and learned of it from Mr. Lavin. In the morning he reported it to the first assistant engineer, who made a joke of it and refused his request for a change to a lower berth. The follow-

ing day he fell out of the bunk again. His head struck the dresser and he was rendered unconscious. Mr. Lavin tried to revive him and finally got him into the lower bunk. He made no effort to obtain assistance, even though plaintiff remained unconscious and had lost a good deal of blood. Plaintiff's breathing seemed normal so Lavin left him in the lower bunk and himself climbed into plaintiff's bunk and went to sleep.

It is for the injuries alleged to have been sustained as a result of the second fall that the suit was brought. The most serious of these were constant headaches which have plagued plaintiff ever since and the setting off of a latent neurotic personality disorder, as a result of which he changed from a kindly, loving husband and father to one who struck his wife and was irritable and unpleasant to his child.

The ship's log and the weather bureau records show that the weather was clear and the sea was calm on both nights. Mr. Lavin agreed that the vessel was not rolling on either occasion.

Plaintiff admitted that he had come on board after he had had a few drinks ashore. He admitted that before the accident he was in the habit of drinking casually and "now and then" got drunk; he claimed that after the accident he drank frequently. His wife testified that he had completely changed after the accident and was no longer the same man; he drank and became violent.

The defendant claimed that plaintiff had bumped against the dresser while staggering about in a drunken condition; that his cabin mate did not call any of the officers or members of the crew, some of whom were nearby in the engine room, because both he and plaintiff knew that plaintiff was not suffering from any injuries, but simply was intoxicated.

Defendant called as a witness Sergeant Mango, a police officer in the locality in New Jersey where plaintiff and his wife resided. This witness gravely challenged their credibility. He testified to complaints to the police and even criminal charges which the wife had made against her husband for mistreatment of her prior to the accident on the S.S. Gulflion, as a result of which she had left him and returned to her former home in England. In cross-examining Sergeant Mango plaintiff in effect accused him of making improper advances to plaintiff's wife, which the witness vigorously denied. On rebuttal plaintiff's wife, who had already given testimony in harmony with her husband's, claimed that Sergeant Mango had made improper advances to her; that he asked her to go out with him and she refused and threatened to inform her husband. She claimed not to remember the written complaints she lodged against her husband a year prior to the accident.

The foregoing is, of course, a partial description of the evidence, which was elaborate and detailed.[1]

It is evident that Sergeant Mango's testimony and the court records seriously contradicted plaintiff's claim that he had gotten along harmoniously with his wife until the accident and that the subsequent quarrels stemmed from a change in his personality caused by the injury suffered on the S.S. Gulflion. But even more, it was visibly evident in the court room that the effort to meet this contradiction by attacking Sergeant Mango's character, which trailed off into a lame refusal to drink beer because of an unexpected teetotalism on the part of Mrs. Domeracki, offended the jury's sense of fair play. Defendant's counsel, of course, used this circumstance in his summation as proof of the lack of credibility of plaintiff and his wife.

■ It was the function of the jury to determine whether plaintiff was injured because he fell out of the bunk on account of an inadequate guard rail or rather hurt himself because he was intoxicated. After having heard the case for four full days, the jury with appar-

1. The Notes of Testimony dealing with this phase of the case have not been transcribed.

ently little or no hesitation accepted the latter view of the facts and returned with a verdict for the defendant about fifteen minutes after the case was entrusted to it.

The contention that the verdict was against the evidence and against the weight of the evidence is wholly untenable and is refuted by a bare narration of the salient facts.

It is in the circumstances thus briefly described that we turn to the principal contention, that a new trial should be granted because of error in the charge. It is claimed that the charge was erroneous and confusing because it did not make clear to the jury that plaintiff was entitled to recover if the negligence of the defendant or the unseaworthiness of its vessel was responsible in whole or in part for his injury. This, he claims, was caused by what the court said on proximate cause.

█ This case is a fresh illustration of the desirability of abandoning all use of the term "proximate cause" in Jones Act cases. In its long history, "proximate cause" has accumulated a number of meanings not intrinsically determinable from the label and even modern efforts at refining its meaning and casting it in simpler and more easily understood terms have not been conspicuously successful.[2] At least it would have been better, having mentioned the genie, if the court had not uncorked the bottle to liberate it with a definition. For undefined, its use without more is not substantial error. See Unto v. Moore-McCormack Lines, Inc., 293 F.2d 26 (3rd Cir., 1961). But proximate cause was defined early in the charge in terms of the natural and reasonably probable consequences of the act or omission complained of. (Charge, p. 7. See also 22 F.R.D. 127, 150, Form Civ. 30–A, and compare with it 28 F.R.D. 401, 435, Form Civ. 4.18 and notes.) The claim therefore is that by defining "proximate cause" in terms of its natural and probable consequences, the court deprived plaintiff of his right to recover if defendant's negligence contributed in the slightest degree to his injury.

It is clear that what is to be avoided is an instruction to the jury that defendant's negligence must have been the *sole* proximate cause of plaintiff's injury, for this would defeat the statutory creation of liability for injury resulting "in whole or in part" from the negligence of defendant. Hoyt v. The Central Railroad, 243 F.2d 840, 843 (3rd Cir., 1957). At no time was the jury told that defendant's negligence must have been the sole proximate cause of plaintiff's injuries; on the contrary, the statutory basis of liability was stated to the jury a number of times. In affirming plaintiff's Point No. 9 (Charge, p. 12) the court told the jury that " * * * the Jones Act * * * gives the seaman the right to recover damages for personal injuries where such injuries result *in whole or in part* from the negligence of the shipowner, its employees, agents or servants". A similar instruction was given in modifying plaintiff's Point No. 14, which dealt with the evidence of a second fall. The jury was instructed that it might find defendant liable if its negligence "in whole or in part caused or contributed to plaintiff's injuries". (Charge, pp. 13–14). Later the jury was specifically instructed that the ordinary rule which bars a plaintiff's recovery if he is contributorily negligent does not apply in cases under the Act, which instead established the doctrine of comparative negligence. Comparative negligence was then described in detail and contrasted with the common law principle applicable in general negligence cases. The jury was told that instead of being barred from recovery as in other cases, a plaintiff in a Jones Act case who had con-

---

2. The "substantial factor" test of the Restatement, Torts, § 431, taken from Professor Jeremiah Smith's view, Smith, Legal Cause in Actions of Tort, 25 Harv. L.Rev. 102, 223, 303 (1912), is analyzed as "only a new synonym for a troublesome legal concept" in Morris, Duty, Negligence and Causation, 101 U. of Pa. L.Rev. 189, 206 (1952).

tributed to his injury was entitled to recover a verdict diminished by the proportion to which his negligence contributed to his injury. (Charge, pp. 15–17).

At the conclusion of the charge, the court, at defendant's request, instructed the jury that "if the condition of the guard rail was not a proximate cause of the plaintiff's accident then, of course, even if the guard rail was defective, that would not make the defendant responsible." (Charge, p. 29). Evidently because of this, plaintiff made an additional request which the court granted in this language: "If the negligence of the defendant or the unseaworthiness of the vessel played any part, no matter how small, in producing the plaintiff's injuries or aggravating any prior injuries, the defendant is legally responsible for any damage that the plaintiff suffered." (Charge, p. 32).

When, after all this, plaintiff requested that the residual remains of the definition of proximate cause used at the beginning of the charge should be eliminated, his suggestion was accepted. The court charged the jury that what it had just been told—i. e., if the negligence of the defendant or the unseaworthiness of the vessel played any part, no matter how small, in producing plaintiff's injury or aggravating any prior injuries—was to be considered by them "as the standard in determining whether the defendant is liable, notwithstanding anything that I may have told you earlier in the definition of proximate cause". (Charge, p. 33).

 Of course, plaintiff is entitled to a charge which viewed in its entirety was free from substantial error even though it may appear clear to the court that the jury's decision was not affected in the slightest degree by the terminology of proximate cause. We, therefore, have retraced in detail what was said on the subject of proximate cause and we believe that whatever error may have been present in the original definition of proximate cause was more than eliminated by what followed on the sub-

ject of comparative negligence, the responsibility of defendant if its negligence or the unseaworthiness of its vessel contributed in whole or in part or in the slightest manner to the plaintiff's injury, and finally by the express instruction that this latter standard was to be the exclusive guide notwithstanding the original definition of proximate cause.

Accordingly we enter the following

### ORDER

AND NOW, February 15, 1962, plaintiff's motion for a new trial is denied.