Gust T. **ZANOS**
v.
**MARINE TRANSPORT LINES, INC.**

Gust T. **ZANOS**
v.
**UNITED STATES of America.**
Civ. A. Nos. 42170, 43838.

United States District Court,
E. D. Pennsylvania.
Aug. 26, 1970.

Freedman, Borowsky & Lorry, Avram G. Adler, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, Thomas E. Byrne, Jr., Philadelphia, Pa., for defendants.

## ADJUDICATION

KRAFT, District Judge.

Plaintiff, a seaman, seeks to recover damages for injuries claimed to have been suffered while boarding the Shawnee Trail, a vessel owned by the United States and operated by its agent, Marine Transport Lines. The bases of his claim are unseaworthiness of the vessel and negligence of the agent. He seeks as well to recover maintenance at the rate of $8 daily, which the parties stipulate to be the applicable rate.

These actions were tried to the Court and the parties have agreed that the Court need not make detailed or extensive findings of fact. They have also stipulated, with the Court's approval, that Zanos v. Marine Transport Lines, Inc., C.A. 42170, shall be dismissed with prejudice, if the Court finds in plaintiff's favor in C.A. 43838.

## LIABILITY

On September 12, 1966, plaintiff, the chief steward aboard the Shawnee Trail, was carrying a box of ship's stores up the gangway, when his foot went through its covering wire mesh. On at least three occasions before that day, the master had ordered a new gangway. On July 4, 1966, while the ship was in Houston, Texas, the port engineer complained to the master that the gangway was in very poor condition and told the master that he should have a new one. The unsafe condition of the gangway had been the subject of several safety meetings conducted by the master prior to. the accident. The gangway contained holes which had been patched with season wire woven into the mesh.

We find that the vessel was unseaworthy and the defendant, United States, was negligent in failing to furnish a reasonably safe and seaworthy gangway. We find that unseaworthiness and negligence to be the sole cause of plaintiff's injuries.

## DAMAGES

At the time of his injury, September 12, 1966, plaintiff was 45 years of age. He was six feet tall and weighed approximately 270–273 pounds. He was considered medically, to be "grossly obese." His marked obesity has persisted since his earlier life, during which he pursued several occupations, among which were: restaurant worker, professional heavyweight boxer, seaman, police officer, steward and luncheonette owner.

When plaintiff's right leg went through the mesh covering of the gangway he fell and sustained injuries, inter alia, to his back, right leg, head and shoulder. After treatment at several Public Health Hospitals, he was declared permanently unfit for sea duty on September 22, 1967, upon release from the United States Public Health Hospital, Staten Island, New York. He was directed to return for an appointment on December 18, 1967. Upon this determination of unfitness for sea duty, plaintiff was compelled by the United States Coast Guard to surrender his seaman's papers.

Plaintiff's back injury was diagnosed to be a lumbosacral strain with a herniation of the intervertebral disc between lumbar vertebra 5 and sacrum vertebra 1. The preponderance of the evidence fairly supports this diagnosis and we so find.

While in a Public Health hospital in November, 1966, plaintiff experienced marked symptoms of what then appeared to be a coronary attack, which was then mistakenly diagnosed as arteriosclerotic heart disease and congestive heart failure. Later cardiac catheterization tests, taken at the University of Pennsylvania in May, 1970, ruled out the existence of any coronary disease.

In December, 1967, plaintiff suffered a gall bladder attack and was admitted to the Allegheny Valley Hospital on December 9, 1967. While in this hospital he underwent a laparotomy, resection of a portion of the omentum of the right colon and a cholecystectomy, the surgical excision of the gall bladder. Plaintiff again experienced severe chest pains, resulting in a doubtful diagnosis of a pulmonary embolism, which could not be more definitely diagnosed upon his discharge on February 12, 1968.

Plaintiff returned to the Allegheny Valley Hospital on four later occasions for treatment of what was thought to be "probable" coronary artery disease. On June 30, 1969, plaintiff was also found to have diabetes. He was discharged from his last hospitalization on August 3, 1969.

In addition to all his medical problems, plaintiff was in financial distress, because a lunchroom, which he purchased in April, 1967, was failing and he was unable to pay his bills. Toward the latter part of 1969, plaintiff became emotionally depressed and in March, 1970, contemplated suicide.

Plaintiff was examined by Dr. Rosillo, a psychiatrist, at the request of plaintiff's counsel, in April, 1970. Dr. Rosillo

concluded that plaintiff was severely depressed and that his cardiac problems were psychogenic or purely functional in nature. Dr. Rosillo also concluded that the back injury suffered by plaintiff in the fall of September 12, 1966, was the initial cause of his depression. This conclusion was based upon plaintiff's expressed fear of surgery to correct his back condition, because plaintiff associated his heart problem with his back pain, which, when severe, caused plaintiff to fear death.

Plaintiff was also examined by another psychiatrist, Dr. Heller, at the request of defendant's counsel. Dr. Heller concluded that plaintiff was severely depressed, but that the primary etiological cause of his emotional distress was his long standing obesity. Dr. Heller opined that plaintiff's mental condition, gall bladder, diabetes and heart problems all stemmed from his obesity, but that the fall of September 12, 1966 may have had an immediate triggering effect on his mental distress.

After careful evaluation of all the evidence, we find that, while the injury suffered by plaintiff on September 12, 1966, was not a significant proximate cause of his depression, it did *play a part in bringing about* plaintiff's mental distress. Domeracki v. Gulf Oil Corp., 202 F.Supp. 89, 91 (E.D.Pa.1962).

Before determining the amount of the monetary damages to be awarded to plaintiff, we must consider plaintiff's claim for maintenance. Defendant, Marine Transport, paid plaintiff maintenance at the rate of $8 daily until September 22, 1967, when plaintiff was declared permanently unfit for sea duty. Thereafter, no further payments were made.

Contrary to defendant's contention that no demand was ever made by plaintiff for resumption of payments, the filing of these actions on February 27, 1967 and October 19, 1967, " * * * constituted notice of plaintiff's continuing need for maintenance and cure." Tuttle v. American Oil Co., 292 F.2d 123,

128 (4 Cir. 1961) ; Brown v. Dravo Corp., 258 F.2d 704, 709 (3 Cir. 1958) cert. denied 359 U.S. 960, 79 S.Ct. 800, 3 L.Ed.2d 767. Additionally, a further demand was made at a hearing before Judge Fullam on February 25, 1969.

In any event, "[s]ince complete 'recovery can be had in the damage action, * * * it becomes a merely theoretical speculation whether the same recovery could also be had under a maintenance and cure count.' " Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 533 (9 Cir. 1962) ; Petition of Oskar Tiedemann and Co., 367 F.2d 498 (3 Cir. 1966).

In determining the amount of damages suffered by this plaintiff two important elements are, inter alia, the extent of the diminution of his earning capacity and his life, and so, his working expectancy. We find that, by reason of the injuries suffered, his earning capacity has been and will continue to be permanently and very substantially diminished, though not totally destroyed. We find, too, that plaintiff's life expectancy is quite limited and very substantially less than average, because of his almost lifelong gross obesity, which has been a prime factor in causing or contributing to his many serious medical and mental problems. He has long and persistently failed to cooperate with his own physician's medical advice, which included a low calorie diet. Both of his parents died at ages substantially lower than average. The concurrence of gross obesity and diabetes is not conducive to longevity.

After careful consideration and evaluation of all plaintiff's damage claims, we find that plaintiff has suffered damage in the total amount of $100,000.

Accordingly, we enter the following.

### ORDER

Now, this 26th day of August, 1970, it is ordered that

1. judgment shall be entered in Civil Action 43838 in favor of the plaintiff and against the defendant, United States, in the amount of $100,-000.

2.   Civil Action 42170, Gust T. Zanos v. Marine Transport Lines Inc., is hereby dismissed with prejudice;

3.   the foregoing adjudication and order comprise the Court's findings of fact and conclusions of law, conformably to Fed.R.Civ.P. 52(a).