Charles BROWN

v.

DRAVO CORPORATION.

Appeal of Charles BROWN.

Appeal of DRAVO CORPORATION.

Nos. 12552, 12553.

United States Court of Appeals
Third Circuit.

Argued June 6, 1958.

Decided Aug. 14, 1958.

On Rehearing (No. 12552) Sept. 23, 1958.

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff.

Bruce R. Martin, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for defendant.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

The libellant, Charles Brown, on March 15, 1948, instituted two actions in the District Court for the Western District of Pennsylvania to recover for injuries allegedly sustained when he fell while working for the Dravo Corporation as a seaman aboard its vessel, the steamer Sam Craig, which resulted in a left indirect inguinal hernia, a ventral hernia, and an injury to his left leg. In one of them, originally a civil action, he sought damages in the amount of $25,000 based upon the alleged negligence of Dravo Corporation and its employees and the unseaworthiness of the vessel. This action was transferred to the admiralty side of the court and consolidated for trial with his other suit, which had been brought in admiralty for maintenance and cure from the date of his alleged injuries. After a trial, the district court found that the evidence failed to establish negligence and also that it did not show that the respondent had failed to maintain the vessel in a seaworthy condition, and judgment was entered for the respondent in the suit for damages. In the suit for maintenance and cure the district court found the libellant entitled to maintenance and cure in the amount of $11,190 and entered judgment for that sum. 157 F.Supp. 265. These appeals followed. The libellant appeals, at our No. 12,552, from the judgment entered for the respondent in the action for damages and the respondent appeals, at our No. 12,553, from the judgment entered in favor of the libellant in the suit for maintenance and cure. For the purposes of argument, the appeals were consolidated and they will be considered together in this opinion.

The accident, out of which these suits arise, happened under the following circumstances. The libellant was a member of the crew of the Sam Craig, a vessel in navigation on the Ohio River and its tributaries. While it was temporarily moored in the Ohio River at Neville Island, Pennsylvania, for the purpose of loading supplies, the libellant and another

member of the crew, Delbert Fuller, were ordered to move a drum of oil weighing 540 pounds into the deckroom. The drum was approximately 4 feet high and 20 inches in diameter. It was brought aboard at the head of the vessel and had to be moved aft along the guard or outer passageway, which was 3 feet, 10 inches wide. The libellant and Fuller placed the drum on a shovel, the libellant pulling the shovel, walking backwards, and Fuller pushing the drum along the steel floor of the vessel. The theory of the libellant's case was that when he reached the capstan on the port side about midway his foot slipped on a loose hemp line, turning his ankle and causing him to fall and to suffer the injuries of which he complains. On the other hand, Fuller, the only other witness to the accident, while agreeing with the libellant that the accident occurred, stated that the libellant's heel caught on a drain pipe which went across the passageway or guard of the vessel. The district court found the latter to be the fact, namely, that libellant tripped over the drain which constituted a standard part of the equipment of the vessel and a part of the equipment of which he was fully aware.

■■ In libellant's suit for damages, he claimed that his injuries were caused by the negligence of the respondent and its employees and the unseaworthiness of the vessel. The libellant relies for recovery on the ancient rule that seamen are the wards of the admiralty, that their rights must be safeguarded by the courts,[1] and that the Jones Act, 46 U.S.C.A. § 688, as welfare legislation, is to be liberally construed to accomplish its beneficent purposes.[2] It is true that it is the duty of a shipowner to furnish appliances adequate to the place and occasion where used.[3] It is also true that he has the absolute duty to maintain a seaworthy ship, the breach of which duty imposes liability without fault not limited by conceptions of negligence,[4] and which duty may, under certain circumstances, involve providing a competent crew as well as a staunch ship and sound gear.[5] But a vessel need not be free from all possibility of mishap, for the seaworthiness of a ship is a relative concept, dependent in each instance upon the circumstances.[6] The crucial consideration is whether the ship was reasonably fit to permit the seaman to perform his task aboard her with reasonable safety.[7] Accordingly the mere fact that the claimant is an injured seaman does not entitle him to recover damages in an action based on negligence or unseaworthiness. In order to recover, his claim must be supported by proof that there actually was the negligence or unseaworthiness he asserts.[8]

■ The libellant contends that the district court erred in finding that no negligence or unseaworthiness was established upon which liability of the respondent could be based. We have carefully reviewed the record and find no support therein for this contention.

1. Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 246, 63 S.Ct. 246, 87 L.Ed. 239.

2. Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692.

3. The Osceola, 1903, 189 U.S. 158, 173–175, 23 S.Ct. 483, 47 L.Ed. 760.

4. Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 99–102, 64 S.Ct. 455, 88 L.Ed. 561; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 90–95, 66 S.Ct. 872, 90 L.Ed. 1099.

5. Boudoin v. Lykes Bros. S.S. Co., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; Spellman v. American Barge Line Co., 3 Cir., 1949, 176 F.2d 716.

6. Ross v. Steamship Zeeland, 4 Cir., 1957, 240 F.2d 820, 822.

7. Grillea v. United States, 2 Cir., 1956, 232 F.2d 919, 922; Lester v. United States, 2 Cir., 1956, 234 F.2d 625, 628.

8. Jacob v. City of New York, 1942, 315 U.S. 752, 755, 62 S.Ct. 854, 86 L.Ed. 1166; Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213, certiorari denied 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675; Hawley v. Alaska Steamship Company, 9 Cir., 1956, 236 F.2d 307.

The libellant's principal argument is that the accident was caused by the respondent's failure to provide proper working tools, namely, a dolly upon which to wheel the drum of oil along the deck into the deckroom. During the trial the question was posed to Fuller whether if he had had a dolly he would have mounted the drum upon it and wheeled it along the deck. Fuller merely said that it would have been a simple way of doing it. The libellant argues that a dolly should have been provided because it is a recognized tool which is used in industry of all kinds, large and small. This may or may not be the fact, but even assuming that it is, it does not follow that a dolly would have been a reasonably safe and suitable tool, let alone an indispensable one, for use aboard the Sam Craig on the occasion in question. Nor does that fact, if it be such, prove the respondent negligent for failure to provide such a tool or the vessel unseaworthy by reason of its absence. The libellant says that if he had been furnished a dolly it would not have necessitated his walking backwards. This, however, is purely conjectural since he did not establish that a dolly would have been suitable for the purpose or how it would have been used, if available.

The libellant also urges that the respondent failed to furnish a competent crew in that Fuller was incompetent because he failed to warn the libellant of the proximity of the drain as he moved backwards. There is no suggestion in the record that libellant depended on Fuller for any direction during the operation. The basis for his contention is that Fuller's failure to warn him was "doubtless due to the fact Fuller had bad eyes in 1947". Fuller testified that he had an eye defect which prevented him from reading ordinary size print, but that he could see well enough to perform his duties on a ship. When the libellant was asked "Didn't you know about Delbert Fuller's eyes", he answered, "Sure, but he could see at a distance as good as I can."

The libellant next argues that the accident was caused by the failure to bring the vessel alongside the landing to permit the drum to be rolled right into its place in the deckroom and the failure of the person in charge of the vessel to do so on this occasion amounted to negligence. The libellant, however, fails to point out a basis for finding the respondent negligent in mooring the vessel as it did. We conclude that the grounds upon which the libellant seeks reversal of the judgment of the district court are all wholly lacking in merit. We are in accord with the conclusion of the district court that the evidence establishes that the libellant's fall was a fortuitous occurrence for which the respondent had no responsibility.

The libellant also contends on his appeal that the district court erred in admitting certain evidence in respect to his hernia condition and asks us to direct the district court to reconsider its finding of fact that the libellant had failed to sustain his burden of proving that the accident caused the left indirect inguinal hernia. This finding was made by the district court in libellant's suit for maintenance and cure, since the court did not reach the question of his injuries in the action for damages, having found that no case had been made out by the libellant in that action. However, the libellant did not appeal from the judgment in the maintenance and cure case, but on the contrary seeks to preserve it intact. Thus, he is here seeking to do indirectly what he has failed to do directly by appealing from that judgment. This he may not do.

We turn next to the respondent's appeal from the judgment entered for the libellant in his suit for maintenance and cure. The district court held that the libellant had not established that the accident caused the left inguinal hernia but found that he did prove that the accident caused the injury to his left leg, disabling him for industrial work, and that he has tried to carry on some gainful work from time to time. The district

court made a finding as to the time that the libellant worked since the accident and concluded that the libellant was entitled to maintenance for 2238 days at the stipulated rate of $5 per day, a total of $11,190, and that he required medical care which the respondent should make available to him. The respondent contends that the district court erred in finding the date of the accident to be approximately September 15, 1947; that libellant was hospitalized as a result of the injuries; that he had proved that the accident caused his leg condition; and that he is entitled to maintenance and cure.

The date of the accident was a highly disputed issue. The libellant alleged that it occurred between the first and 15th of September, 1947. The respondent sought to establish that it had occurred during March or April, 1947. Fuller, who corroborated the fact that the accident did occur, testified that it happened in March or April 1947, but he also testified that he had worked for the respondent during the latter part of 1947 and that the accident happened "on the last hitch". Later he retracted the latter part of this testimony, saying he was mistaken, and that the libelant had fallen in March or April.

The basis of libellant's claim was that he has been unable to perform heavy work due to the poor result of the hernia operation and due to the leg condition and that he requires surgery for both these conditions. It appears that the libellant worked for respondent up to October 2, 1947, after which time he sought employment with Jones & Laughlin Company, but on October 14, 1947 was rejected after a physical examination on account of a hernia condition. That same day he was examined by his own physician, Dr. George A. Zuck, who found that he had an umbilical hernia, a left indirect inguinal hernia, and a derangement of internal cartilages of the left knee joint. Dr. Zuck testified that he took the libellant's history at that time and learned that the libellant, while conveying a drum of oil during the first part of September, 1947, fell bruising the lateral side of his left thigh and knee joint, which became black and blue, and he felt a tearing pain and swelling in the left inguinal canal of the umbilicus. The libellant was advised to enter the Marine Hospital for necessary care and Dr. Zuck called someone at the respondent's office and a hospital ticket was issued. The libellant entered the hospital October 15th, was operated on for the hernia condition and left the hospital on January 7, 1948. Dr. Zuck testified that when he examined the libellant in May, 1948, he found the libellant to be 50 per cent disabled in the performance of his duties as a fireman, his previous employment, and that due to the poor result of his recent operation, he required further surgery for the hernia condition and also required an operation for the derangement of cartilage of the left knee. Upon examination of the libellant in November 1956 the prognosis showed that the operations were still required and that the leg condition had worsened. His opinion was that surgery would give the libellant 50 per cent maximum recovery. Dr. J. E. McClenahan, witness for the respondent, testified that the libellant had no disability from a hernia condition but that he did suffer disability from his left knee and that as a result, he is handicapped in performing his work to the extent of 40 or 50 per cent. He also testified that the hospital record of October 15, 1947 indicated that the libellant had a bruise on his left leg from the hip to the knee due to a fall which had occurred four or five weeks previously.

As can be seen, the issues which the respondent raises here were controverted during the trial and it was necessary for the district court to resolve them. On our review of the evidence, we cannot say that the findings of the district court in this regard are clearly erroneous.

■ The respondent contends further that a shipowner fulfills his obligation of maintenance and cure by supplying the seaman with a hospital ticket, which the respondent did in October 1947, and, therefore, it cannot be chargeable for maintenance and cure because of the con-

tinuing leg condition. Furthermore, says the respondent, it is unconscionable to charge it with more than nine years maintenance for a condition which was never reported by the seaman and which it did not know existed during that time. And its final argument is that the obligation to provide maintenance and cure exists only for the duration of the voyage and a reasonable time thereafter, relying for this proposition on Calmar S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, and Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850. The answer to these arguments is that the district court found that respondent was sufficiently apprised of libellant's condition when the suits were filed on March 15, 1948 and that the pending proceedings constituted notice of libellant's continuing need for maintenance and cure. The duty to provide maintenance and cure did not stop with the libellant's severance from employment, Murphy v. American Barge Line Co., 3 Cir., 1948, 169 F.2d 61, 64, certiorari denied 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406, for it is the duty of the ship to maintain and care for the seaman after the end of the voyage until he is so far cured as possible. Farrell v. United States, 1949, 336 U.S. 511, 518, 69 S.Ct. 707, 93 L.Ed. 850. The duty to provide maintenance and cure thus continues until the time when the maximum cure possible has been effected, and the district court did not award the libellant more than this. We, therefore, find no error in its judgment in this regard.

We conclude that both libellant's and respondent's appeals are without merit. Accordingly the judgments appealed from will be affirmed.

### On Petition for Rehearing.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

### PER CURIAM.

The petition for rehearing raises no questions which were not fully argued to the court. We think that they were correctly decided. Since no judge who participated in the decision desires rehearing and four circuit judges have not asked for rehearing in banc, the petition for rehearing will be denied.

BIGGS, Chief Judge (dissenting).

In my opinion a ship is unseaworthy if it does not have equipment on board which will permit the moving of a heavy weight, such as a 540 pound drum of oil, by some other means than by pushing and pulling it along a steel deck on a shovel. The libellant, Brown, was injured during the course of this grotesque operation and it is clear that he would not have been injured had a dolly been available and been employed.

For these reasons I dissent from the order denying rehearing en banc.