George A. & Ruth DAVIS, Plaintiffs-Appellants,

v.

AMERICAN COMMERCIAL LINES, INC.; Mac Towing, Inc.; M/V "Robert Greene," Defendants-Appellees.

No. 86–5682.

United States Court of Appeals, Sixth Circuit.

Argued March 31, 1987.

Decided July 24, 1987.

Rehearing and Rehearing En Banc Denied Oct. 5, 1987.

Steven C. Schletker, argued, Covington, Ky., Meredith L. Lawrence, for plaintiffs-appellants.

John R. McCall, argued, Scott T. Dickens, Louisville, Ky., for defendants-appellees.

Before JONES and NORRIS, Circuit Judges, and COOK, District Judge.[*]

ALAN E. NORRIS, Circuit Judge.

George A. Davis, a seaman, and Ruth Davis, his wife, appeal from the summary judgment granted to defendants in the Davises' suit for injuries, maintenance, cure, and loss of consortium. Summary judgment was based upon plaintiffs having given a release to defendants in exchange for payment of $7,500. Plaintiffs maintain that the district court erred in determining that there was no genuine issue of material fact as to the validity of the release since they were not represented by counsel when the settlement was consummated, were unaware of the contents of several medical reports, did not have full understanding of the rights relinquished by the release, and the consideration was inadequate on its face.

George Davis was hired as a seaman, in September 1982, to work as a deck hand and, on November 2, 1983, he injured his right wrist while attempting to secure a wire to a tow that had been picked up by the vessel on which he was working. Defendants later offered Davis and his wife $7,500 in return for their release of all claims that they might have, and, on August 8, 1984, the Davises, unaccompanied by counsel, went to the law offices of defendants' attorney for the purpose of executing a settlement and release. At the settlement conference, the attorney asked the Davises a series of questions, which addressed aspects of Davis' employment, his injury, his claim against defendants,

and the terms of the release and settlement. During the course of the settlement conference, plaintiffs said they did not desire to have an attorney present to represent them, and they executed a release agreement in exchange for payment of $7,500.

On November 18, 1985, the Davises filed this action seeking compensation under "The General Maritime laws" and the Jones Act, 46 U.S.C. § 688. Defendants moved for summary judgment based on the release.

■ Courts of this country have long shown a special concern for the welfare of seamen; they are considered to be the "wards of admiralty" and, as such, releases signed by them are carefully scrutinized when they are set up as a defense by shipowners. *See Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246–48, 63 S.Ct. 246, 251–52, 87 L.Ed. 239 (1942). The rule is well-established:

[T]he burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

*Id.* at 248, 63 S.Ct. at 252.

The traditional extent of the "wards of admiralty" concept is illustrated by language used by Justice Story in 1823:

"They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and *cestuis que trustent* with their trustees.... If there is any undue inequality in the terms, any disproportion in the

[*] Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that *pro tanto* the bargain ought to be set aside as inequitable.... And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen." *Harden v. Gordon*, Fed.Cas. No. 6047, at pp. 480, 485 [C.C.Me., Oct. Term 1823].

317 U.S. at 246–47, 63 S.Ct. at 251.

Accordingly, in order to carry its burden of establishing the validity of a seaman's release, a shipowner must affirmatively show that no advantage was taken of the seaman, and that burden is particularly heavy where the consideration is inadequate. 317 U.S. at 247, 63 S.Ct. at 251.

In addition to the burden ordinarily shouldered by any shipowner in establishing the validity of a seaman's release, defendants have assumed the burden imposed upon movants for summary judgment.

■ The question on appeal, then, is whether the district court was in the position, upon a motion for summary judgment, to conclude that there was no genuine issue of material fact concerning the validity of the release, and that, as a matter of law, defendants were entitled to judgment.

Although the magistrate, upon whose report and recommendation the district court relied, mentioned the "wards of admiralty" standard, he then went on to scrutinize the validity of the release in the context that would be expected to surround a release given as part of an ordinary arm's length business transaction. The district court, in its entry of judgment noted the "careful procedures followed by the defendant in taking" the release. Indeed, we are favored with sixty pages of meticulous questioning of Davis, undertaken by counsel for defendants to preserve a record of the settlement conference. Defendants paid only $7,500 for the release of plaintiffs' claims

stemming from an injury which counsel described, in the transcript of the settlement conference, as "a permanent serious injury to your right wrist, something that is going to prevent you from doing any heavy manual labor from now on." Yet, in all the sixty pages, discussion of the adequacy of $7,500 as compensation for Davis' permanent impairment is carefully avoided. Accordingly, one might reasonably characterize the settlement conference transcript as a careful memorialization of a manifestly unfair settlement. Certainly, Davis was entitled to such a favorable construction of the event, on summary judgment, especially when one considers the district court's responsibility to assure that the bargain was just and reasonable. The court's responsibility to apply the standard of scrutiny required of a trustee was particularly apparent in this case, in view of the inherent inequality of bargaining positions of the parties, the nominal amount of consideration paid, the nature and permanency of the injury, and Davis' age (he was born in 1945) and work skills. *See, e.g., Halliburton v. Ocean Drilling & Exploration*, 620 F.2d 444 (5th Cir.1980); *Charpentier v. Fluor Ocean Servs., Inc.*, 613 F.2d 81 (5th Cir.1980).

In his affidavit in opposition to defendants' motion for summary judgment, Davis said he was informed "that counsel would not be necessary to settle this type of claim"; that he did not have the information necessary to determine that the $7,500 was grossly inadequate; that his lack of understanding of the release is evidenced by his subsequently having attempted to obtain workers' compensation; that he was not fully advised of his rights to recover under federal law; and that defendants' claims adjuster told him that "$7,500 was all that was available for this type of injury."

When considered in contrast with defendants' summary judgment materials, this affidavit raised genuine issues of material fact concerning the fairness of the bargain, over-reaching and misrepresentation by defendants, and the extent of Davis' under-

standing of his rights and of the full effect of the settlement and release.

In its judgment entry, the district court observed that seeking judicial approval of these kinds of settlements is "uneconomical and counter-productive." Actually, as this case illustrates, when one considers the duty of the courts to jealously protect the rights of seamen, the institution of a "friendly" suit, based largely upon stipulated facts, with the seaman represented by counsel and available to testify and be questioned by the court, often will prove to be the most economical and productive method of settling these cases. That is the approach which appears to be gaining favor in the Fifth Circuit, where so many of the reported cases of these controversies originate.

The judgment of the district court is reversed and this cause is remanded for further proceedings according to law and consistent with this opinion.