RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0101P (6th Cir.)
File Name: 01a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JAMES W. PERKINS,
     *Plaintiff-Appellant,*

JUDITH LYNN PERKINS,
     *Plaintiff,*

     *v.*

AMERICAN ELECTRIC POWER
FUEL SUPPLY, INC.; INDIANA
MICHIGAN POWER COMPANY,
INC., RIVER TRANSPORTATION
DIVISION,
     *Defendants-Appellees.*

No. 99-4500

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00064—Sandra S. Beckwith, District Judge.

Argued: November 29, 2000

Decided and Filed: April 6, 2001

Before: NELSON, SILER, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** James B. Helmer, Jr., HELMER, MARTINS & MORGAN, Cincinnati, Ohio, for Appellant.    Todd M. Powers, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellee.  **ON BRIEF:** James B. Helmer, Jr., HELMER, MARTINS & MORGAN, Cincinnati, Ohio, Meredith Lynn Lawrence, LAWRENCE & SCHLETKER, Warsaw, Kentucky, for Appellant.  Todd M. Powers, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellee.

CLAY, J., delivered the opinion of the court, in which NELSON, J., joined.  SILER, J. (p. 22), delivered a separate concurring opinion.

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiff, James Perkins, appeals from the district court's order entering judgment in favor of Defendants, American Electric Power Fuel Supply, Inc. ("AEP") and  Indiana Michigan Power Company, Inc., River Transportation Division,[1] after a bench trial on Plaintiff's claims for negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under general maritime law.  Plaintiff also appeals the district court's order denying Plaintiff's pre-trial motion to continue the trial date, extend discovery, and amend his complaint.  For the reasons that follow, we **REVERSE** in part and **AFFIRM** in part the district court's order entering judgment against Plaintiff and **REMAND**;

---

[1]Defendant AEP owns and operates Defendant Indiana Michigan Power Company, Inc.

————————————

## CONCURRENCE

————————————

SILER, Circuit Judge, concurring. I concur in most of the conclusions reached by the majority in this case. However, I disagree with the conclusion that the district court clearly erred in denying recovery under the Jones Act. Although the majority makes out a good case for concluding that defendant was negligent in failing to provide adequate safety precautions, this is a finding of fact. There was a basis for the district court to find that the ship owner was not negligent by failing to have safety ropes or handrails. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574 (1985). Similarly, I would not find that the vessel and the barge were unseaworthy because there was not adequate safety equipment as the failure to have certain safety equipment was also a finding of fact, which I think was not clearly erroneous.

Nevertheless, I agree with the majority in its conclusion that the vessel and barge were unseaworthy because the ratchet was not reasonably fit for its intended use. Truly, like negligence, seaworthiness is usually a finding of fact. See *Mahnich v. Southern S. S. Co.,* 321 U.S. 96, 98 (1944). However, the malfunction of the ratchet shows that it was not reasonably fit for its intended use, so the vessel was not seaworthy. *See Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 199 (1st Cir. 1980). Therefore, the malfunction of the rachet was a substantial and direct cause of the injuries to Perkins.

In conclusion, I would also reverse and remand but only on a narrower basis than determined by the majority.

however, we **AFFIRM** the district court's order denying Plaintiff's pretrial motion.

## BACKGROUND

Plaintiff worked for Defendant AEP from 1980 until the date of his accident. Plaintiff worked as a deckhand from 1980 to 1988 on commercial river vessels. In 1988, he was promoted to second mate, the position he held until his injury which is the subject of this litigation. Defendant AEP is a river transportation company, transporting bulk commodities, primarily coal, on the Ohio River and its tributaries. Defendants were the operators of the *M/V C.J. Bryan* and barge AEP-508.

Plaintiff's duties as second mate included seeing that wires, ratchets and rigging were properly placed on the tow, in accordance with the captain's orders, and inspected prior to use. Plaintiff was injured on December 28, 1997 when he fell from barge AEP-508 to the deck of the *M/V C.J. Bryan,* a distance of about eight or nine feet. When Plaintiff fell, he was attempting to "lay" a "rock and roll" or "jockey" wire from an outside barge to the *M/V C.J. Bryan.* Although Plaintiff had laid dozens of wires on inside barges before, he had never performed this specific task. Plaintiff was attempting to lay the wire by tightening it using a stationary rachet located on the port stern of barge AEP-508, cranking the ratchet outboard with a cheater pipe slipped over the ratchet handle for added leverage. Plaintiff had gotten the wire substantially tight when the "dog"[2] of the ratchet failed to catch properly, causing the tension on the cheater pipe to give way. Then, Plaintiff was propelled forward, lost his balance and fell over the edge of the barge onto the deck of the *M/V C.J. Bryan.* The evidence at trial revealed that

———————————

[2]The "dog" is the brake-like component of the ratchet designed to engage the teeth of one of the gears to prevent the gear from turning. (J.A. at 1012, 1375.)

Plaintiff was straddling the ratchet while attempting to lay the wire.

Plaintiff sustained extensive injuries from the fall including permanent disabling injuries. Plaintiff suffers from chronic pain and permanent physical limitations. He has had five surgeries; his right knee is permanently fused; his right leg stands a half inch off the ground; and his left ankle is fitted with a steel plate and may require fusion or even amputation.

Plaintiff and his wife, Judith Perkins, filed suit against Defendants for his injuries on January 21, 1998. The complaint alleged that Defendants were liable for negligence under the Jones Act and for the unseaworthiness of the *M/V C.J. Bryan* and/or the AEP-508 barge under general admiralty law because the ratchet Plaintiff used was defective and was the cause of his injuries, and Defendants failed to take adequate safety precautions and provide training for Plaintiff.[3]

Prior to trial, on July 6, 1999, Plaintiff filed a motion to continue the trial, amend his complaint, and extend discovery. The district court denied the motion on August 17, 1999 and the matter went to trial on September 20, 1999.

After a three-day bench trial, the district court found that Defendants were not negligent and that the *M/V C.J. Bryan* and AEP-508 barge were seaworthy. Moreover, although not necessary to its decision, the district court concluded, without explanation, that Plaintiff was negligent in straddling the ratchet in violation of AEP policy and that his negligence was likely the sole proximate cause of his injuries. This appeal followed.

---

[3] Plaintiff alleged an additional claim under the Americans with Disabilities Act (ADA) and his wife alleged a claim for loss of consortium. The district court granted summary judgment to Defendants on the loss of consortium claim on August 20, 1998 and dismissed the ADA claim after Plaintiff failed to answer a show cause order. These claims are not before the Court in this appeal.

claims that Plaintiff was inadequately trained or that the ratchet he worked with was defective; nor can Plaintiff recover under the unseaworthiness doctrine based on his inadequate training theory. However, we conclude that the district court erred in denying Plaintiff recovery under the Jones Act since Plaintiff proved that Defendants were negligent in failing to provide adequate safety precautions to prevent Plaintiff's injuries and that Defendants' negligence was a cause of Plaintiff's injuries. Likewise, the district court erred in denying Plaintiff recovery under the unseaworthiness doctrine inasmuch as the record indicates that Plaintiff proved that Defendants failed to provide vessel equipment, in this case a ratchet, reasonably fit for its intended purpose and take adequate safety precautions for Plaintiff's safety. The failure of the ratchet and the inadequate safety precautions were a proximate or direct and substantial cause of Plaintiff's injuries, thereby making Defendants strictly liable under the unseaworthiness doctrine for Plaintiff's injuries.

We further conclude that Plaintiff failed to establish that the district court abused its discretion in denying his motion to amend his complaint, to extend discovery, and continue the trial date.

Accordingly, we **REVERSE** in part and **AFFIRM** in part the district court's judgment entered against Plaintiff and **REMAND** for a hearing on the issue of damages to the extent necessary; we also **AFFIRM** the district court's order denying Plaintiff's motion to amend his complaint, extend discovery, and continue the trial.

requires. *See* Fed. R. Civ. P. 15(a). In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *See Gen. Elec. Co.*, 916 F.2d at 1129. Here, there is evidence of delay, but Defendants have not alleged that they have been prejudiced by any proposed amendment. Nevertheless, we note that the court only four months earlier gave Plaintiff an opportunity to cure deficiencies in his complaint and Plaintiff declined to do so. Having found that Plaintiff had not shown justification for an amendment to add new claims or new parties to his complaint, the district court did not abuse its discretion in denying the motion to amend.

In addition, the district court did not abuse its discretion in denying Plaintiff's motion to continue the trial and extend discovery. As to discovery, the court noted that Plaintiff had not shown what information or discovery was needed and how it would be relevant or beneficial to Plaintiff's case. Moreover, the discovery period in this case had already lasted over a year. And Plaintiff waited until less than three months prior to the start of trial to file his motion. Under these circumstances, the district court did not abuse its discretion in denying further discovery. *See e.g., Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402-03 (6th Cir. 1998). As to Plaintiff's motion to continue the trial, Plaintiff has failed to show that he was actually prejudiced by district court's denial of his motion, that additional time would have produced additional witnesses or evidence for Plaintiff's case; absent such a showing, Plaintiff cannot claim that the district court abused its discretion. *See United States v. Martin*, 740 F.2d 1352, 1360-61 (6th Cir. 1984).

## CONCLUSION

We therefore conclude that the district court did not err in denying Plaintiff recovery under the Jones Act based on

## ANALYSIS

### I.

We review the district court's legal conclusions *de novo*. *See Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999). The factual findings of the district court following a bench trial are reviewed for clear error. *See id.* In our review of the district court's factual findings, this Court gives due regard to the district court's opportunity to judge the credibility of the witnesses. *See Adams County Reg'l Water Dist. v. Vill. of Manchester, Ohio*, 226 F.3d 513, 517 (6th Cir. 2000). A finding of fact is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

This action arises under the Jones Act, 46 U.S.C. § 688, and general admiralty law. Plaintiff, Defendants' employee and a seaman,[4] claims that Defendants were negligent and Defendants' vessels, the *M/V C.J. Bryan* and AEP-508, were unseaworthy because the equipment appurtenant thereto, namely the ratchet, malfunctioned under proper and intended use and Defendants failed to provide adequate safety measures and training for Plaintiff.

Plaintiff contends on appeal that the district court erred in its factual findings and application of the law. Specifically, Plaintiff claims that the district court erred in finding that the ratchet was not defective, that Plaintiff had received adequate training, that Defendants were not negligent in failing to take certain safety precautions to prevent Plaintiff's injury, and that the *M/V C.J. Bryan* and AEP-508 barge were not unseaworthy. Plaintiff also claims that the district court disregarded Plaintiff's status as a ward of the court and erred

---

[4] Neither party contests that Plaintiff is a seaman within the meaning and coverage of the Jones Act.

in its application of the proof of negligence required under the Jones Act and the standard of liability under the seaworthiness doctrine. And although not necessary to the district court's decision, Plaintiff also challenges the district court's finding that Plaintiff was negligent in straddling the ratchet and that Plaintiff's negligence was likely the sole cause of his injuries. We hold that the district court erred in concluding that Plaintiff was not entitled to recover either on the Jones Act claim or the unseaworthiness claim.

### A.

It is a well-settled principle of law that seamen are "emphatically the wards of the admiralty." *Chrandis, Inc. v. Latsis*, 515 U.S. 347, 354-55 (1995) (citation and quotation omitted); *accord Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431 (1939); *Davis v. Am. Commercial Lines, Inc.*, 823 F.2d 1006, 1007 (6th Cir. 1987).

> The paternal regard of the Courts and Congress for seamen has, for the most part, grown out of the peculiar conditions of their employment. These conditions, by their very nature rigorous and subjecting the seaman to unusually severe discipline for extended periods of time, are quite unlike the conditions which attend land labor, and have resulted in extraordinary remedies being made available to those who accept this calling.

*Paul v. United States*, 205 F.2d 38, 42 (3d Cir. 1953). "It is for this reason that remedial legislation [enacted] for the benefit and protection of seamen has been liberally construed to attain that end." *Socony-Vaccum*, 305 U.S. at 431; *accord Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 782 (1952).

One such remedial measure is the Jones Act, 46 U.S.C. § 688, which provides in pertinent part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by

The district court issued an order denying Plaintiff's motion. The court's order stated it had advised Plaintiff of the deficiencies in his complaint four months prior to his motion and invited Plaintiff to amend his complaint at that time, but Plaintiff declined to do so. The court noted that "Plaintiffs have waited until the eleventh hour to move for an extension, a continuance and a leave to amend their complaint. None of the matters raised in support of their Motion should have come as a surprise to Plaintiffs." (J.A. at 30-31.) The Court also found that

> They assert that Plaintiff James W. Perkins' medical condition has changed and will continue to change, that the discovery is not yet complete, and that an amendment of the complaint would permit them to add specific allegations related to matters learned in recent discovery. To the extent that these matters learned in recent discovery are germane to Plaintiffs' existing claims, Plaintiffs need not amend their complaint add those matters. To the extent that Plaintiffs wish to assert new claims, they have not identified those claims or provided a justification for their failure to seek leave to do so at an earlier time. With the exception of matter related to Plaintiff James W. Perkins' medical condition, Plaintiffs have not identified matters concerning which additional discovery should be permitted. With regard to matters related to Mr. Perkins' medical condition, Plaintiffs will be required, as is often the case in actions involving bodily injuries, to present evidence related to the injuries, Mr. Perkins' current condition, and his prognosis. Plaintiffs have not demonstrated they will be unable to do so if the Court does not grant the requested extension and continuance. For all of those reasons, Plaintiffs' Motion is denied.

(J.A. at 30-31.)

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so

to show the correct way of laying the wire, the deck hand there pushed the ratchet beyond vertical.

However, even if the district court had properly concluded that Plaintiff was negligent, we find that his negligence would not bar his recovery, but only reduce his damages under the theory of comparative negligence under the Jones Act.

## II.

Plaintiff next contends that the district court abused its discretion in denying his motion to amend his complaint, to extend discovery and to continue the trial date. We find no such abuse of discretion.

We review the district court's denial of Plaintiff's motion to amend his complaint for abuse of discretion. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). Similarly, we review the district court's denial of discovery for abuse of discretion. *See United States v. Jones*, 159 F.3d 969, 977 (6th Cir. 1998). Likewise, the denial of a motion for continuance of trial is reviewed for abuse of discretion. *See Scholl v. Felmont Oil Corp.*, 327 F.2d 697, 700 (6th Cir. 1964).

Plaintiff filed his complaint on January 21, 1998. A calender order, entered April 23, 1998, set the deadline for amending the complaint for May 20, 1998, and the deadline for discovery for December 31, 1998. The parties later entered a stipulation extending discovery to July 30, 1999. Plaintiff filed his motion to amend his complaint, extend discovery, and continue the trial on July 6, 1999. Plaintiff argued that he should be allowed to amend his complaint to reflect information found through discovery. Specifically, Plaintiff stated that he learned that the cheater pipe Plaintiff used had been manufactured by Defendant AEP; he had learned the identity of the manufacturer of the ratchet, whom he wanted to add as a party; and that depositions were still not complete due in part to the debilitating health of Plaintiff.

jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.

46 U.S.C. § 688. Under the Jones Act, seaman are afforded rights parallel to those given to railway employees under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq.* The FELA provides in pertinent part:

Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. Therefore, in suits under the Jones Act, the court must determine whether the evidence justifies the conclusion that the employer was negligent and that the employer's negligence played any part, however slight, in producing the injury to the seaman. *See Sweeney v. Am. Steamship Co.*, 491 F.2d 1085, 1089 (6th Cir. 1974).

Proof of negligence (duty and breach) is essential to recovery under the Jones Act. *See Jacob v. City of New York*, 315 U.S. 752, 755 (1942). Whether an employer is negligent is determined under the "ordinary prudence" standard normally applicable in negligence cases. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).

However, once the plaintiff proves negligence, he need only show that his employer's negligence is the cause, in whole or in part, of his injuries. *See Daughenbaugh v. Bethlehem Steel Corp.*, 891 F.2d 1199, 1204 (6th Cir. 1989). In essence, there is a reduced standard for causation between the employer's negligence and the employee's injury. *See Gautreaux*, 107 F.3d at 335. Moreover, because the comparative negligence principle applies to negligence actions under the Jones Act, any negligence on the part of the employee operates only to mitigate the damages due to the employee unless his negligence is the sole cause of his injuries. *See Jacob*, 315 U.S. at 755.

To recover, the plaintiff must first establish "the breach of a duty to protect against foreseeable risks of harm." *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 437 (4th Cir. 1999). In the instant case, Plaintiff alleged that Defendants were negligent in several respects: (1) in providing a defective ratchet with which Plaintiff had to work; (2) in failing to provide Plaintiff with adequate training; and (3) in failing to take certain safety precautions to prevent Plaintiff's injury. We conclude that Plaintiff met his burden of proof with respect to the safety precautions and that the district court clearly erred in this respect. As to the other two claims of negligence, the defective ratchet and the training, we are not similarly convinced that Plaintiff met his burden of proof. We will address each in turn.

We conclude that Plaintiff has failed to establish the breach of a duty with respect to his first theory of negligence, that the ratchet was defective, inasmuch as Plaintiff has failed to establish the employer's prior notice of the defect or that the risk of harm from a defective ratchet was foreseeable. It is a fundamental principle that, under the Jones Act, an employer "must have notice and the opportunity to correct an unsafe condition before liability will attach." *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993). "There must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have

that doing so was dangerous because it increases the likelihood of the dog slipping and the operated being thrown off balance. Plaintiff denied pushing the pipe past vertical the night of his injury even though he testified at his deposition that he could not remember whether he had pushed the pipe past vertical.

(J.A. at 35-36.)

We believe that the district court's findings in this respect are unsupported by the evidence and clearly erroneous. Even though Plaintiff was straddling the ratchet, there is not enough information in the testimony to conclude that this position was negligent and that it contributed to Plaintiff's injuries. Plaintiff's expert testified that Plaintiff's straddling position was a more stable position than if he had not straddled the ratchet. Defendants' expert testified that straddling the ratchet was improper, but on cross-examination admitted that in his deposition he testified that straddling the ratchet, i.e., placing Plaintiff's legs farther apart, provided a more stable platform. In the face of this uncontradicted evidence from Plaintiff's expert and Defendants' expert's more contradictory statements, we believe that the district court clearly erred in finding that Plaintiff was negligent in straddling the ratchet simply because it violated AEP policy. There appears to be no support in the law for the proposition that the violation of company policy alone constitutes negligence.

We decline to entertain Defendants' argument that Plaintiff was negligent in pushing the ratchet past vertical because the district court did not draw such a conclusion. At most, there is only evidence that Plaintiff did not know whether he pushed the ratchet past vertical; there is no evidence to show that he actually pushed the ratchet past vertical. Furthermore, the evidence on the record shows that even if Plaintiff had actually pushed the ratchet past vertical, it would not constitute negligence. In Defendants' own exhibit, purporting

for their failure to provide a seaworthy vessel. Plaintiff also showed that the failure to provide adequate safety equipment was at least one of the proximate causes of Plaintiff's injuries inasmuch as it was foreseeable, given the previous fall, that Plaintiff could be injured from a fall on the vessel in light of the failure to provide safety rope or similar equipment.

### C.

We now consider Plaintiff's contention that the district court erred in determining that he was negligent in straddling the ratchet. We need not address the district court's *dicta* that Plaintiff's negligence was the sole proximate cause of his injuries inasmuch as we have previously concluded that Defendants' negligence contributed to Plaintiff's injuries.

The district court noted that

13. At the time of his injury, Plaintiff was straddling the ratchet with one foot flush to the coaming and the other beside the outside edge of the ratchet. AEP safety rule 1.13 instructs employees not to "straddle wire or ratchets when tightening barge lines." In this context, the Court finds there is no significant difference between tightening barge "lines" and tightening barge "wires" as Plaintiff was doing. Plaintiff's own expert testified that it would be "common sense" in the industry not to straddle the ratchet. Rule 1.13 further provides that "employees shall operate the ratchet lever from the inboard side." This means from the side of the ratchet closest to the center of the vessel upon which the employee is standing. When an employee is straddling the ratchet, he is not to the inboard side of the ratchet and is likewise in violation of this latter portion of the rule.
14. AEP policy also prohibits pushing the cheater pipe past vertical when tightening a wire. Plaintiff learned through on-the-job training and experience

known of the unsafe condition." *Id.* The evidence on record fails to show that Defendants knew or should have known of any possible defect in the particular ratchet Plaintiff was using or that they had an opportunity to correct such a defect. In fact, the evidence demonstrates that Plaintiff himself inspected the ratchet prior to using it and did not detect any defects. Moreover, Plaintiff's supervisor conducted another visual inspection of the ratchet after Plaintiff's accident and did not detect any defects in the ratchet; this constitutes evidence that Defendants did not have notice of any defect in the ratchet. Absent evidence sufficient to show that Defendants knew or should have known that the ratchet was defective, Plaintiff has failed to establish that Defendants breached a duty to protect Plaintiff from a foreseeable risk. *See Ribitzki v. Canmar Reading & Bates, Ltd.*, 115 F.3d 658, 663 (9th Cir. 1997).

Similarly, we conclude that Plaintiff has failed to establish that Defendants were negligent in ensuring that Plaintiff was adequately trained to lay the jockey wire. With respect to the adequacy of Plaintiff's training, the district court found:

17. Plaintiff was an experienced seaman. He received on-the-job training which is consistent with the custom and practice in the river industry. In addition, during his seventeen year with AEP, Plaintiff attended safety meetings on at least a monthly basis. When Captain Harrington was aboard the vessel, Plaintiff attended safety meetings on a weekly basis. Some of these meetings included instruction and warnings regarding the safe use of ratchets, cheater pipes and other rigging.
18. Moreover, Plaintiff had significant experience in laying and tightening jockey wires. Having laid 50-100 such wires before the night of his injury, he was familiar with the risks and dangers associated with that type of wire. Although Plaintiff testified that this was the first time he had laid the wires to the outside barges, as opposed to a center barge, the

Court finds this configuration did not change the way in which the wires were tightened or the way the ratchet was positioned and cranked. Moreover, Plaintiff had laid thousands of other wires, at least some of which had required him to tighten the ratchet toward an empty cargo hopper or toward the edge of a barge exposing him to comparable danger, which would have given him similar training and experience. The Court finds Plaintiff had adequate training and experience to safely lay the jockey wire on the night of his injury.

(J.A. at 37-38.) We are not convinced that these findings are clearly erroneous.

Plaintiff does not deny that he had previously laid thousands of wires safely. His testimony reveals that he had no reason to believe that he could not perform the procedure safely that night. Plaintiff, however, argues that he had never laid a jockey wire to an outside barge before. Plaintiff argues that he had experience in laying the wire to the center barge, not the outside barge. There is a difference between the two, Plaintiff argues, such that he needed additional training to perform the task.

Defendants' expert, however, testified that a review of exhibits admitted into evidence revealed that Plaintiff had extensive training, some above and beyond industry standard. Defendants' expert further testified that Plaintiff was trained in tightening wires, ratchet replacement and proper rigging. Despite that Plaintiff had not received specific instruction regarding laying jockey wire to an outside barge, Defendants' expert testified that there was no appreciable difference in the method for laying jockey wires to an outside barge and the thousands of other wires Plaintiff laid to the center barge. Defendants' expert stated that, from the evidence including Plaintiff's deposition and training information, Plaintiff's training was adequate to allow him to lay a jockey wire to an outside barge. Defendants' expert's testimony supports the

(Defendants' expert concluded and the district court found that the ratchet malfunctioned).[6]

Furthermore, Plaintiff established that the malfunction of the ratchet was a proximate or a direct and substantial cause of his injuries. Defendants' expert testified that the malfunction of the ratchet was common. Given the manner in which a wire is laid, we find that it was foreseeable that if a ratchet malfunctioned during the laying of a wire, the force resulting from the ratchet could propel a seaman forward and cause injury. It is clear from the evidence that the malfunction of the ratchet was a substantial and direct cause of Plaintiff's injuries. The district court therefore erred in determining that, despite the testimony that the ratchet malfunctioned under normal use, the *M/V C.J. Bryan* and AEP-508 were seaworthy. To the contrary, the record indicates that Defendants failed in their absolute duty to maintain a seaworthy vessel because the ratchet Plaintiff was using on the night of his injury was not reasonably fit for its intended use. *See Hubbard*, 626 F.2d at 200; *Tex. Menhaden Co*, 332 F.2d at 528.

We further conclude that Plaintiff can recover for unseaworthiness on the ground that the *M/V C.J. Bryan* and AEP-508 did not have adequate safety equipment and therefore were not fit for their intended uses. As discussed earlier, Defendants knew of the dangers of the ratchet failing as well as the dangers of seamen falling on the vessel, having had a seaman injured on the same vessel by a fall just a month prior to Plaintiff's injuries. This evidence is sufficient to show that the *M/V C.J. Bryan* and AEP-508 were unseaworthy and that Defendants were therefore strictly liable

---

[6]Unlike a claim under the Jones Act, where a finding of negligence is necessary, the source of the malfunction is irrelevant to an unseaworthiness claim. "[U]nseaworthiness is a *condition*, and how that condition came into being--where by negligence or otherwise--is quite irrelevant to the owner's liability for personal injuries resulting from it." *Ferrara*, 99 F.3d at 453 (emphasis in original).

have had something to grab and his fall would have been prevented. We therefore conclude that the district court erred in determining that Plaintiff was not entitled to recover under this theory of negligence.

**B.**

Under the seaworthiness doctrine, there is an absolute duty to maintain a seaworthy ship, the breach of which imposes liability without fault, i.e., strict liability. *See Brown v. Dravo Corp.*, 258 F.2d 704, 706 (3d Cir. 1958). A shipowner has an obligation to "'furnish a vessel and appurtenances reasonably fit for their intended use.'" *Havens*, 996 F.2d at 217. However, a vessel need not be "free from all possibility of mishap, for the seaworthiness of a ship is a relative concept, dependent in each instance upon circumstances." *Brown*, 258 F.2d at 706. To prove an unseaworthiness claim, a plaintiff must show that the unseaworthy condition of the vessel was the substantial and direct or proximate cause of the plaintiff's injuries. *See Havens*, 996 F.2d at 218.

It is well-settled law that even a temporary or unforeseeable failure of a piece of vessel equipment under proper and expected use is sufficient to establish unseaworthiness provided that the unseaworthy condition was the proximate cause of the harm suffered by the plaintiff. *See Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996); *Havens*, 996 F.2d at 217-18; *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir. 1980); *Tex. Menhaden Co. v. Johnson*, 332 F.2d 527, 528 (5th Cir. 1964). Plaintiff testified that he used the ratchet and attempted to lay the jockey wire in the same manner as always. In addition, Plaintiff's supervisor testified that he saw nothing abnormal, incorrect, or unusual about Plaintiff's performance during the period that he observed him. In the instant case, there is sufficient evidence on the record to conclude that Plaintiff was properly using the ratchet for its intended purpose when it malfunctioned

district court's conclusion. Giving due regard to the district court's opportunity to judge the witness' credibility, as we must, we conclude that the district court's findings as to the adequacy of Plaintiff's training were not clearly erroneous.

We next turn to the district court's finding of fact and conclusions of law as to Plaintiff's allegation that Defendants were negligent in failing to provide adequate safety precautions. Specifically, the district court found that

20. Although, the ratchet on barge AEP-508 that Plaintiff was using at the time of the accident was older, he determined pursuant to his responsibility as second mate that it was not in need of replacement or repair. Likewise, upon inspection after the accident, Captain Harrington determined the ratchet was not in need of replacement or repair and left it in service for the remainder of the tow. Tow ratchets were removed from barge AEP-508 on January 27, 1998, one of which was determined to be in need of replacement. However, it was not established which ratchet Plaintiff was using on the night of the accident. Accordingly, the Court finds that barge AEP-508 was reasonably safe and fit for its intended purpose on the night of December 28, 1997. No evidence was offered to establish that barge AEP-508 departed in any way from industry standard.

21. The *C.J. Bryan* had passed inspection by the Coast Guard under the Responsible Carrier program without suggestion that any modification was needed to the vessel in order for it to be reasonably safe and fit for its intended purpose. The installation of a "rigging" or "safety" deck between the towknees [sic] is not required by regulation, nor is it customary or common in the industry on a vessel like the *C.J. Bryan*. Likewise, the installation of a "safety chain" or grab irons between the towknees [sic] is not required or customary in the industry.

Neither the absence of these safeguards, nor the lack of rubber on the towknees [sic], rendered the *C.J. Bryan* unsafe or unfit for service the night of December 28, 1997.

(J.A. at 39-40.) Here, Plaintiff takes issue with district court's findings and argues that they are based on facts not in evidence. We agree that the district court's findings are unsupported by the evidence in the record.

Plaintiff argues that the district court's finding that *M/V C.J. Bryan* had passed inspection by the Coast Guard and under the Responsible Carrier program without suggestion that modification was needed to the vessel was not supported by the record. Specifically, Plaintiff points to the fact that *M/V C.J. Bryan* is an uninspected vessel, meaning that the Coast Guard does not inspect the vessel for or regulate the construction of safety equipment such as the handrails, safety chains or guardrails about which Plaintiff complains. As an uninspected vessel, federal regulations only require that the vessel have minimal safety requirements such as life preservers, emergency radio beacons, fire extinguishers, etc.[5] *See* 46 C.F.R. Pts. 24-27.

Although the district court correctly pointed out that there were no regulations or industry practices requiring the presence of safety ropes or handrails, there was no evidence that safety ropes or handrails were inconsistent with custom and practice. The evidence at trial reveals that Defendants installed safety chains and rails in several other areas of the

---

[5]Defendants argue that the Court should not consider these regulations because Plaintiff did not introduce them into evidence below. However, the court sees no difference between these regulations and applicable case law which this Court may consider even though not relied on by either party below. In addition, the record indicated to the district court that the vessel was an uninspected vessel and the district court had at its disposal the regulations indicating the safety requirements of an uninspected vessel.

vessel. Moreover, other vessels in Defendants' fleet had safety appliances between the tow knees. Defendants' expert testified at trial that the size of the vessel would prohibit the installation of a safety deck, but conceded that nothing prevents the installation of a safety chain on top of the tow knees. Defendants argue that the inspections of the Responsible Carrier program did not result in recommendations that either safety chains or safety decks be constructed on the ship. However, the testimony does not point to the extent of those inspections and whether the inspections were meant to consider whether safety chains or safety decks were needed.

In addition, there was testimony by Defendants' safety manager that, one month prior to Plaintiff's accident, another worker on the *M/V C.J. Bryan* fell from the tow knee and was injured. Furthermore, Defendants' expert testified that the failure of the ratchet was common in the industry. Based on these facts, we conclude that the district court erred in determining that Defendants were not negligent in failing to provide adequate safety measures. These facts show that Defendants knew of the risk that the ratchet could fail and also knew that a seaman could fall from the tow knee and injure himself; nevertheless, Defendants failed to adequately guard against these risks for the safety of their seamen. Moreover, that Defendants had installed safety ropes in other ships and other areas of the *M/V C.J. Bryan* indicates that it would not have been excessively burdensome in light of the risks to the seamen for Defendants to install safety ropes here. Given that one month prior to Plaintiff's injury another seaman was injured by a fall on the *M/V C.J. Bryan*, we conclude that Defendants were negligent in failing to take adequate safety precautions in the face of the notice of the danger to their seamen.

Similarly, there is sufficient evidence to show that Defendants' failure to provide the safety ropes was the cause, in whole or part, of Plaintiff's injuries. The testimony at trial was that if a safety rope had been in place, Plaintiff would