Paula MARTIN, By and Through Arthur H. LEWIS, her guardian ad litem, Plaintiff,

v.

REYNOLDS METALS COMPANY, Defendant.

Verla MARTIN, Plaintiff,

v.

REYNOLDS METALS COMPANY, Defendant.

Paul MARTIN, Plaintiff,

v.

REYNOLDS METALS COMPANY, Defendant.

Civ. Nos. 6278–6280.

United States District Court
D. Oregon.

July 7, 1952.

Irving Rand and George Mead, Portland, Or., for the plaintiffs.

Frederic A. Yerke, Jr., of King, Miller, Anderson, Nash & Yerke, Portland, Or., Clifford N. Carlsen, Jr., Portland, Or., W. Tobin Lennon, Richmond, Va., for the defendant.

EAST, District Judge.

This matter coming to the Court upon a motion for a directed verdict it is not the function of the Court to weigh the evidence. We must look at the evidence before us in the most favorable light to the plaintiffs and determine whether or not from that evidence, allowing all inferences that flow therefrom, reasonable men could reach a different conclusion.

Bearing in mind in these three cases the injury complained of is that of a personal injury as distinguished from injury to real or personal property, the Court cannot help but be struck by the fact that the so-called doctrine of Rylands v. Fletcher[1] or the strict liability and ultra hazardous condition theories of liability generally refer to trespass on property as distinguished from person. There is one exception where this theory of liability is discussed and that is the Suko case[2] in Oregon. There a personal injury resulted but none of the mentioned theories of liability were adopted. There is one other factor that the Court wants to point out, and that is in the majority of these cases where strict liability as such is imposed, there is an apparent injury either to property or to person, a catastrophe of some nature has happened.

In the Ure against the United States case[3] that Judge Fee had, there was obvious damage to property by reason of the flooding of it. Here we have an alleged injury which is denied in its entirety, so, first of all, the jury has the question of fact of whether or not an injury did occur, so that complicates our search somewhat, but analyzing it we find simply this:

We have a situation where each of the plaintiffs claims that he received personal injury by reason of receiving into his system certain flourine compounds which they claim originated within the plant of the defendant, became airborne and were deposited upon the lands upon which they worked and lived, in turn contaminating the air about them and the foods produced on their land.

The defendant is engaged in a perfectly legal use of its property, conducting thereon a recognized industry, namely, an aluminum reduction plant. It is stipulated by the parties that in the course of defendant's legitimate use of its property, that gases, fumes and particulates emanate into the atmosphere from said plant, consisting primarily of hydrogen flouride, cryolite, calcium flouride, iron flouride and silicon tetraflouride, which are in the form of gases, liquids and solids and are immediately diffused into the air, and that portions thereof have settled at various times upon the lands occupied by the plaintiffs. Furthermore, it is agreed by all the experts who appeared here that the majority of these compounds are toxic or poisonous, but the debate between the experts and the question the jury is going to have to determine, is at what point or quantity do these compounds become poisonous or are likely to become poisonous and harmful to humans. It is a matter of quantity or degree as they point out.

Plaintiffs contend that a sufficient quantity was deposited on their lands to cause them injury. The defendant denies that any such quantity did occur and further denies that they would receive the injury which they claim herein if it had been so.

Now can we say, in the face of these facts, that the defendant is necessarily engaged in a business which diffuses into the air poisonous objects such as we ordinarily refer to, poisonous matters that are inherently dangerous to human beings?

In trying to determine under what theory of liability, if any, this complex question of fact is to be submitted to the jury, we can only look to the authority we have in Oregon for guidance. We think the Oregon law is sufficient to guide us.

Let us first turn our attention to Judge Fee's decision in Ure v. United States, supra. Bear in mind that there the defendant was maintaining an irrigation canal which, the Court pointed out, had a certain rate of flow and a certain quantity of water and that if the dike broke it was bound to flow upon the land adjacent

---

1. L.R. 1 Ex.Ch. 265, affirmed; Fletcher v. Rylands (1868) L.S. 3 H.L. 330.

2. Suko v. Northwestern Ice & Cold Storage Co., 166 Or. 557, 113 P.2d 209.

3. Ure v. United States (White v. United States), D.C.Or., 93 F.Supp. 779.

to the canal and particularly as it did when the canal bank broke, upon the lands of the plaintiff. The Court went fully into this question of strict liability and reviewed all the Oregon cases that bore upon it and ultimately Judge Fee reaches the conclusion that in that particular case he did not have to determine which theory of liability was applicable, but determines [93 F.Supp. 791] * * "this is a trespass for which liability follows at common law and under the Oregon decisions."

"The defendant was handling a highly dangerous instrumentality in a position where the lands of plaintiffs were peculiarly exposed to peril, and was bound to exercise a degree of care proportionate to the injuries likely to result to others if the ditch did not hold the stream. When plaintiffs proved the collapse of the wall of the canal and the injuries suffered by him, he made out a prima facie case of negligence. 'A very high degree of danger calls for a very high degree of care, which, however, amounts to no more than ordinary care in such a case.' "

And there he lays emphasis upon the doctrine of the Suko case, supra. Now let us analyze the Suko case.

Recall in that case that defendant was engaged in a perfectly lawful enterprise of maintaining upon its roof a water tank. You can look cross the skyline and see many of them. The tank burst and dropped a large quantity of water upon the plaintiff and adjoining land and he was personally injured. There it is hard to find any distinction between that case and the situation presented in Ure v. United States. The plaintiff is injured by water when it is in such quantity that it is in an inherently dangerous form. We do not quarrel with the proposition that an irrigation canal up above the land if it broke would certainly damage plaintiff's land, and most certainly if a water tank of the proportions involved in the Suko case, burst and dumped its whole load upon an individual some stories down that person was going to be injured.

But the Oregon Supreme Court, in the Suko case, did not adopt the so-called Rylands doctrine. They adopted the pure and simple rule of negligence with the test or measure of ordinary due care and gave plaintiff the benefit and evidentiary aid of the so-called doctrine of res ipsa loquitur. Here was an instrumentality that was in the exclusive possession and control of the defendant. Something that ordinarily we would not expect to happen did happen and damage resulted. This is the pure and simple test as the Court sees it, of res ipsa loquitur [4].

What do we have in our instant case? We have a defendant engaged in a perfectly legitimate and legal business, that of making aluminum. In the course of making that metal there are, by reason of the electrolysis that is involved in the process, certain compounds developed, which by the action of the elements escape and are dispersed upon adjacent lands unless some type of control or collection is used. The evidence of the case shows a large quantity of flourine solids or compounds escaped from the plant which had to be deposited on adjoining lands. These quantities diminished with installation of increasing efficiency of controls. During the time involved in this case two systems of control or retention within the plant area of said compounds were installed by the defendant.

Now it develops to this point: If it is found by the jury that these

---

4. "These instructions in our opinion violated one of the fundamental conditions permitting the application of the rule of res ipsa loquitur. That rule, amongst other things, is predicated upon the condition that the agency which has produced an injury is within the exclusive possession, control, and oversight of the person charged with negligence whence, legitimately, flows the inference that, if there is any explanation of the accident consistent with freedom from negligence, he ought to be able to give that explanation * * *." Asheim v. Fahey, 170 Or. 330, at page 343, 133 P.2d 246, at page 251, 145 A.L.R.2d 861.

382

fluorine compounds did leave the plant of the defendant and did become deposited on plaintiffs' lands to such an extent that they did receive into their systems these compounds and did become poisoned thereby and did suffer a personal injury, then that is a finding of the jury that relates back to a causation caused by the defendant and arising solely from its exclusive control and possession of the plant. At this state of the case, there being no exculpatory explanation of how it happened it seems to this Court that it falls directly within the res ipsa loquitur doctrine which is quoted very simply in this statement from the Suko case, supra * * * if we would just paraphrase the language, and I will make an attempt to do so.[5] When the plaintiff proved the emanation of flourine compounds from the plant of the defendant and the injury suffered by him as a result thereof, he made out a prima-facie case of negligence on the part of the defendant. So far as I am able to ascertain from the record no attempt has been made by the defendant to prove the cause of the emanation or the escaping of the flourine compounds so it is a question for the jury with all the evidence before it whether a preponderance of such evidence is in favor of the plaintiff.

Without belaboring the matter any further, it is my thought that if and when the plaintiff has proved to the satisfaction of the jury by a preponderance of the evidence these existing facts which are claimed and outlined, then a prima-facie case of negligence is presented. That being so, it is an inference that the jury can take into consideration together with all the other evidence in the case in determining whether or not the defendant was negligent, and it thereupon became the duty of the defendant to come forward with evidence to show that it was not negligent.

The burden of proof never at any time shifts, it still being upon the plaintiffs. Nevertheless it would be for the jury to weigh such evidence as the defendant brings forward in connection with explaining the inference of negligence and to make an ultimate determination of where the evidence preponderates, so with that in mind the matter will be submitted to the jury on the theory of negligence if any, and the lack of ordinary due care and caution on the part of the defendant with the aid in favor of the plaintiff of the rule of res ipsa loquitur as I understand it expressed here. With that in mind the motion for directed verdict on the second ground will also be denied.

---

5. "When the plaintiff proved the collapse of the tank and the injuries suffered by him as a result thereof, he made out a prima facie case of negligence on the part of the defendant. So far as we have been able to ascertain from the record, no attempt was made by the defendant to prove the cause of the bursting of the tank. Its effort was to show only that it was not at fault. It was a question for the jury, with all the evidence before it, whether the preponderance of such evidence was in favor of the plaintiff." Suko, supra, 166 Or. at pages 567-568, 113 P.2d at page 214.