**Richard T. HAWLEY, Appellant,**

v.

**ALASKA STEAMSHIP COMPANY, a corporation, Appellee.**

**No. 14758.**

United States Court of Appeals Ninth Circuit.

Aug. 3, 1956.

Rehearing Denied Sept. 12, 1956.

Kane & Spellman, Seattle, Wash., for appellant.

Bogle, Bogle & Gates, Robert V. Holland, Seattle, Wash., for appellee.

Before STEPHENS, BONE and FEE, Circuit Judges.

BONE, Circuit Judge.

Plaintiff-appellant brought this action for damages under the Jones Act, 46 U. S.C.A. § 688, alleging that negligence of appellee was the proximate cause of injuries sustained by him while working in the hold of one of appellee's ships. At the close of the plaintiff's case in a trial before a jury the lower court granted defendant-appellee's motion for a judgment of dismissal for insufficiency of the evidence to prove the alleged cause of action. A motion for a new trial was denied and from the judgment and order of dismissal with prejudice plaintiff prosecuted this appeal.

The facts, as portrayed by appellant, appear to be these: Appellant is an American seaman, who at the time of the claimed injury was a member of the Engine Department of the M/V Square Sinnett, a ship owned by appellee which was then loading at Uganik, Kodiak Island. On the day of the accident, August 21, 1953, appellant was working, not in the Engine Department, but in the No. 1 hold of the ship, assisting other men to "stow" cases of canned salmon being lowered into the hold on a pallet board operated by a winch. Under the terms of a Firemen's Union collective bargaining agreement, its members may be called to assist to load or unload cargo when there are insufficient longshoremen available. It would appear that in pursuance of this agreement, appellant was working in the hold.

Appellant had been assigned to work on the port side, along with three other men, all of these men being cannery workers from the cannery at Uganik. On the starboard side of the hold were two of the ship's sailors and three members of the Engine Department. Also on the port side was one Raymond J. Perry, a seaman, who was in charge of assigning men to work on the port or starboard side. Appellant had previously been assigned to work in the hold by the Chief Mate of the vessel. The area upon which the men were working consisted of tiers of cased salmon previously loaded into the hold and comprised a total area of approximately fifteen feet straight back from the pallet board and across the whole of the ship. At the after end of the hold there had previously been stacked sacks of fish meal; there was a space of approximately four feet left between the fish meal and the cases of salmon, this to avoid contamination of the salmon. Behind the level where Perry was working there was a drop-off of about twelve to twenty feet above the bottom of the vessel. Perry, in the after portion of the hold, had only a distance of five feet in which to work between the area where the pallet board cleared the hatch coaming and the drop-off behind him.

Appellant, working in the forward end of the hold (and opposite where Perry was working), had only two or three feet between the edge of the hatch coaming and the tiers of salmon behind him. Appellant argues in his brief that he could not move to his left due to the existence of an escape ladder at that point.

Appellant claims that it was agreed between the five men on the port side that when the loaded pallet board was lowered into the hold by the winch it would be swung in a clockwise direction as far as possible "to a fore and aft position," so that more leeway could be gained as the pallet board went under the port wing of the ship. Appellant testified that the pallet board was swung *counter-clockwise* and struck him, forcing him against the cases of salmon back of him. "I could not jump out, because the ladder was on this side of me, and on the other side, I had too far to go."

At the time he was struck he thought that no injury had occurred to him. But a short time later, bleeding commenced in the umbilical region of his body, and an infection developed. As a result of

this infection, he has had several operations. At the time of the trial, a doctor called as a witness testified that there would probably be a future operation, and perhaps additional treatment after that.

Appellant urges that the lower court committed reversible error in granting defendant's motion to dismiss the cause made at the conclusion of plaintiff's case, and in denying plaintiff's motion for a new trial, and in entering and signing a judgment and order of dismissal. He urges (1) that there were questions of fact as to the existence of negligence which should have gone to the jury; (2) that the court failed to apply a "liberal construction" to the definition of "negligence," as required by the Jones Act; (3) that the court failed to apply the doctrine of comparative negligence when viewing the facts; and (4) that the court, on motion of appellee, failed to view the evidence in the light most favorable to appellant, and to give him the advantage of every fair and reasonable intendment that the evidence could justify.

On this appeal appellant contends that the evidence he offered,[1] if viewed in a light most favorable to him, unquestionably established a *prima facie* case. He insists that if so viewed this evidence shows three things:

(1) Appellee failed to provide appellant with a safe place in which to work;

(2) Appellee failed to provide appellant with competent co-employees, and

(3) There was no supervision of the work going on at the time appellant was injured.

The contentions before us justify a reference to cases directly dealing with the problem.

■ "'A mere scintilla of evidence is not enough to require the submission of an issue to the jury.'" Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231,

74 L.Ed. 720, quoted in Deere v. Southern Pacific Co., 9 Cir., 1941, 123 F.2d 438, 440, certiorari denied 1942, 315 U.S. 819, 62 S.Ct. 916, 86 L.Ed. 1217; De Zon v. American President Lines, 9 Cir., 1942, 129 F.2d 404, certiorari granted 1942, 317 U.S. 617, 63 S.Ct. 160, 87 L.Ed. 501, affirmed 1943, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065, rehearing denied 319 U.S. 780, 63 S.Ct. 1025, 87 L.Ed. 1725. There must be substantial evidence offered by plaintiff to justify submission of the case to the jury. United States v. Holland, 9 Cir., 1940, 111 F.2d 949; Galloway v. United States, 9 Cir., 1942, 130 F.2d 467, certiorari granted 1943, 317 U.S. 622, 63 S.Ct. 437, 87 L.Ed. 504, affirmed 1943, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, rehearing denied 1943, 320 U.S. 214, 63 S.Ct. 1443, 87 L.Ed. 1851; Carew v. R. K. O. Radio Pictures, D.C.S.D.Cal.1942, 43 F.Supp. 199. While the Deere, De Zon and Galloway cases involved motions for directed verdict, and not for dismissal, appellant and appellee concede that the same rules for reviewing the evidence apply to both motions.

■ When ruling upon a motion challenging the sufficiency of the plaintiff's evidence, the trial court in a case tried to a jury does not weigh the evidence or evaluate the credibility of the witnesses, but decides as a matter of law whether there is a lack of evidence to prove any necessary elements of plaintiff's case. Lovas v. General Motors Corp., 6 Cir., 1954, 212 F.2d 805; Willits v. Yellow Cab Co., 7 Cir., 1954, 214 F.2d 612. Questions concerning the credibility of witnesses and the weight to be given to their testimony is a matter for the jury. Guerrero v. American-Hawaiian S. S. Co., 9 Cir., 1955, 222 F.2d 238; Bateman v. Donovan, 9 Cir., 1942, 131 F. 2d 759.

■ When ruling upon a motion challenging the sufficiency of a plaintiff's evi-

---

1. Three witnesses (including appellant) gave testimony as to the circumstances of the accident. Two testified by deposition. Their deposition testimony, later discussed, was vague as to exactly what happened at the time of the injury.

dence, the question presented is whether there was any evidence upon which the jury could have found negligence on the part of the defendant which was the proximate cause of the injury suffered by plaintiff, when the evidence is viewed in the light most favorable to plaintiff. Casey v. American Export Lines, 2 Cir., 1949, 173 F.2d 324, reversed on other grounds, 2 Cir., 176 F.2d 337, certiorari denied 1949, 338 U.S. 885, 70 S.Ct. 189, 94 L.Ed. 544; Bateman v. Donovan, supra; Martin v. Reynolds Metals Co., D.C. Or.1952, 135 F.Supp. 379.

"* * * standards [of proof judges have required for submission of evidence to the jury] * * * cannot be framed wholesale for the great variety of situations in respect to which the question arises. Nor is the matter greatly aided by substituting one general formula for another. It hardly affords help to insist upon 'substantial evidence' rather than 'some evidence' or 'any evidence,' or vice versa. The matter is essentially one to be worked out in particular situations and for particular types of cases. Whatever may be the general formulation, the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.'" Galloway v. United States, 1943, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089.

From all the evidence offered by plaintiff in this case, we cannot say that the trial judge erred in ruling upon the motion. We agree with the trial judge that there was an insufficient showing by the plaintiff of negligence on the part of defendant to send the case to the jury.

Appellee cites the case of Seville v. United States, 9 Cir., 1947, 163 F.2d 296. This was a Jones Act case wherein Seville, a seaman, sued the United States for injuries to his hand and wrist. A sling load of ship supplies being loaded alongside ship struck him causing him to fall on the dock during the loading operation. The lower court denied a recovery for this injury based on a charge of negligence. We affirmed, both on the negligence issue and on a second claim for maintenance, holding that Seville had failed to maintain his burden of proof on the tendered issue of appellee's negligence. A reading of the Seville opinion will indicate a rather close parallel of controlling facts in that case and the case at bar. In our opinion we said at page 298:

"Appellant knew that the outward boom tip was not over the center of the sling board and that he would have to move away from the load because it would swing toward him when it was raised. Appellant did not move fast enough to escape the swing and it pushed him backwards causing him to fall and fracture two bones in his hand."

Appellant Hawley urges that the place of work was unsafe because it was a severely confined space. Confined it was, but that does not necessarily make it unsafe. Appellant's testimony was that he had a space of from one and one-half to three feet within which to "back away" from the swinging pallet; that he had hold of the pallet and knew that it was coming towards him; that it was loaded with cases of salmon, weighed about 1600 or 1700 pounds at least, yet he was struck after the pallet had been moved only ten inches. There was no showing by appellant that the manner of loading this hold was not the usual and customary one. Even if it be assumed that the one and one-half to three foot "work area" was unreasonably small, it cannot be said to be the proximate cause of the injury. In his own testimony appellant stated that the pallet board moved only ten inches before it struck him. At the time of the impact, by a short backward movement in the space behind him, he could have avoided contact with the board.

Appellant further contends that negligence was shown by placing three inexperienced cannery employees in the same crew with him, leaving only Perry in this

group who had experience in cargo handling. There is very meager evidence that the other men were inexperienced. On cross-examination appellant admitted that he was inexperienced and would not be able to say whether others were capable cargo handlers or not. On this point the testimony of appellant was highly speculative. He testified that an inexperienced crew "might have been some help to sustaining the injury I got." Even assuming that the other men working with appellant were inexperienced, there was an insufficient showing that the proximate cause of the injury was the presence of these inexperienced workers.

The evidence as to *how* the pallet swung and *how* it hit appellant is vague. Appellant testified that previous pallets had been swung clockwise, but the pallet board which struck him was swung counter-clockwise. However, the other two witnesses testified that they could not recall in which direction the pallet which struck appellant was moving. Without objection, appellant's witness Perry also testified that it would be immaterial which way the pallet was swung as either corner might have hit appellant. Perry also testified that the pallet board in question was not handled any more vigorously or roughly that day than any of the previous ones.

Appellant also contends that there was a lack of proper supervision by appellee. From appellant's testimony the court could readily have inferred that Perry was in charge of the men working in the hold. Appellant's point is that a qualified ship's officer would have seen the danger of the small work area with its drop-off to the rear of the loading area (behind Perry, not appellant) and taken measures to make the work area more safe (such as by use of a net at the drop-off). Perry was an able seaman experienced in cargo handling. Appellant's testimony was that it was customary for a loading crew "on each side" to pick one of their members "to run the gang"; that a mate in charge of all the holds traveled from one hold to another at periods of time during the loading. We conclude that there was an insufficient showing that lack of supervision was the proximate cause of appellant's injury.

From all of the testimony, we must agree with the trial court that the evidence was insufficient to take the case to the jury. Appellant's contention here is that under a liberal interpretation of the Jones Act the lower court should have found sufficient evidence of negligence to send the case to the jury. Our decision in De Zon v. American President Lines, supra, 129 F.2d at pages 407–408, is relevant to this contention. We there stated:

"We are reminded by plaintiff that this act 'is to be liberally construed in aid of its beneficent purpose to give protection to the seaman and to those dependent on his earnings' [case cited], but we must also be mindful of the fact that although the Jones Act has given 'a cause of action to the seaman who has suffered personal injury through the negligence of his employer' [citation], still it does not make that negligence which was not negligence before, does not make the employer responsible for acts or things which do not constitute a breach of duty."

In Freitas v. Pacific-Atlantic Steamship Co., 9 Cir., 218 F.2d 562, 564, we said:

"The law does not impose upon the shipowner the burden of an insurer nor is the owner under a duty to provide an accident-proof ship. Lake v. Standard Fruit & Steamship Co., 2 Cir., 185 F.2d 354; Cookingham v. United States, 3 Cir., 184 F.2d 213. In the condition of the record there was nothing other than speculation on which to base a verdict for the plaintiff."

Both parties are in agreement that contributory negligence of appellant would not preclude a recovery. But the doctrine of comparative negligence is not applicable where, as here, appellant failed to show negligence by appellee.

The judgment and order of the court dismissing plaintiff's cause of action with prejudice was correct and is affirmed.

STEPHENS, Circuit Judge.

I dissent. The case should have been given to the jury.