Frank BRENHA, Jr., et al., Appellants,

v.

Alfred J. SVARDA, Appellee.

No. 17074.

United States Court of Appeals
Ninth Circuit.

June 12, 1961.

John J. Karmelich, August Felando, Herbert R. Lande, San Pedro, Cal., for appellant.

Melvin M. Belli, San Francisco, Cal., and William F. Reed, San Diego, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and SWEIGERT, District Judge.

PER CURIAM.

Appellee-plaintiff sued for damages for personal injuries under the provisions of the Jones Act, 46 U.S.C.A. § 688, claiming negligence and unseaworthiness of the vessel Viking.

Appellee, a fisherman-cook, was injured on the fishing boat Viking out of San Diego, California, on June 28, 1959. At sea, and in a school of tuna, appellee, regularly the cook, left his post to aid in bringing in fish. He was standing on a rack at the stern of the boat; one of the chains holding the rack gave way as he was bringing in a fish. The fish hit the deck, the barbless hook on his line left the fish and struck appellee in his right eye, destroying it.

The sole question involved before us is whether the dropping of the rack was or was not the proximate cause of the fishhook striking appellee's eye. Appellee urges it was; appellants that there could be no proximate cause, because the dropping of the rack could only have lowered the appellee and his pole and thus caused a slack in the line and not a tension.

It is undisputed that the fish caught on appellee's line was lifted from the ocean and hit the boat's deck. The fall of the platform took place while the fish was in the air. Appellants urge that appellee must have jerked the fish toward him, and that this tension on the line caused the hook to fly toward him. Appellee urges that the rack gave way *while* the fish was being landed, that appellee's off-balance fall and the fact another fisherman fell against him, *before* appellee's pole was taken from his fisherman's pad put tension on the line and prevented a release from the tension normally experienced when the pole is taken from the pad; thus enabling the fisherman to seize the theatre line (wire leader) and bring the fish toward the fisherman, so that the hook may be removed by hand, if necessary.

The court below carefully went into the rapid sequence of events which led up to the injury. In comment, he said:

"The Court finds that as this thing happened all of a sudden in a moment or second or so the giving away of the rack caused the situation where increased tension was put on

the line, the hook jerked out of the mouth of the fish, plaintiff's face was turned toward the rear, and the hook caught him in the right eye. I don't think that those findings are inconsistent with what the witnesses have said here.

"A man engaged in a hazardous occupation knows what he is about, but more the reason that he should be given a safe place to work and not have the hazard of an insecure footing added to the hazards of his occupation.

"Within this five-second interval it is not possible for the Court to say exactly when that rack gave way. But obviously there was insecure footing from the time the rack gave way. Nor do we know whether this rack gave way suddenly or whether it took a second or two for the bolt to pull out of the stern of the ship and allow the rack to settle. At any rate, here is a man, with a fish that he landed, on an insecure footing. It could well have been that as he attempted to pull the fish forward the ordinary shifting of weight in attempting to take another motion brought about the situation where he no longer had the secure footing to stand upon and the tension was put upon the line. This matter of hooking a fish, swinging it back and all is almost like a golf stroke—there is a rhythm of motion, and it requires a safe place for a man to stand who engages in this activity."

The only matter in agreement is that: "it all happened so fast" (Tr. p. 192)—"instantaneously"—"together" (Tr. p. 192)—"all mixed together" (Tr. p. 56)—"all at once"—"simultaneously"—"just whoom!" (Tr. p. 231). Appellants divide the process of catching tuna into three steps—appellee likens it to one continuous golf swing. Isolated excerpts from the testimony (largely from appellee himself) lend support to each side's theory of how the accident happened (Tr. pp. 192–194; 207–209; 217; 220; 222; 229).

From the evidence the court found (Tr. p. 17, #8) the eye bolt holding the chain supporting the rack broke, that the rack suddenly dropped, that the appellee was thrown off-balance; that he partially fell, that another seaman fell against him, that the whole interval of time from hooking of the fish to the hooking of appellee's eye was two or three seconds; that *the unusual tension on the fish line was caused by appellee's shift in position, in turn caused by the dropping of the fishing rack*—that the unsafe rack proximately caused the injury.

There was more than a scintilla of evidence (Hawley v. Alaska Steamship Co., 9 Cir., 1956, 236 F.2d 307); there is some evidence, and not mere speculation to support the district court's findings.

From the record we cannot say as a matter of law the findings of fact were clearly erroneous.

The judgment is affirmed.