NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0337n.06

No. 17-4198

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 10, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARVIN ALLEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NCL AMERICA LLC, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendant-Appellee, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| CIGNA CORPORATION, dba Cigna Group | ) | |
| Insurance; LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE:   BATCHELDER, MOORE, and LARSEN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**   NCL America LLC ("NCLA") hired Marvin Allen to work on its cruise ship, *Pride of America*.  On Allen's first day of work, he twice struck his knee on the leg of a steel table.  His injuries were severe and resulted in a total knee replacement.  Allen sued NCLA and alleged, in a series of amended complaints, violations of the Jones Act, general maritime law, and federal admiralty law.  The district court dismissed Allen's Jones Act and general maritime law claims three times.  Allen opposed the first two motions to dismiss those claims, but not the third.  On appeal, Allen argues that the district court erred by dismissing his Jones Act and general maritime law claims.  We disagree, and **AFFIRM**.

**I.**

NCLA hired Allen, a fifty-nine-year-old retired corrections officer, to work on its cruise ship, the *M/S Pride of America*. Allen alleged that he was initially hired to work in a "Utility Hotel" position, but that NCLA assigned him without advance notice to work in a "Utility Galley" position. This utility galley position, Allen claimed, required "considerably more physical capacity and/or exertion" than a utility hotel position would require.

On Allen's first day of work, he carried a heavy tub of silverware from the dishwasher to "an elevated steel transfer table." While lifting the tub onto the table, which he says was at or above his chest level, Allen struck his left knee on the leg of the table. Later, while lifting a stack of plates onto the same table, Allen struck his left knee on the table leg a second time.

Allen alleged that these injuries to his knee required a total knee replacement. He further alleged that he suffered "a pulmonary embolism and post traumatic heel burn" as a result of complications from the knee replacement. All told, Allen alleged, he incurred large medical bills, faces ongoing medical costs, has suffered and will continue to suffer "great physical pain and mental anguish," has "been rendered disabled," has suffered lost earnings and earning capacity, and has lost the ability to work.

On October 8, 2015, Allen brought suit in the Northern District of Ohio, initially naming the wrong corporate entities as defendants. In his Complaint, he alleged negligence under the Jones Act (Count I), unseaworthiness claims under general maritime law (Count II), and maintenance-and-cure claims under federal admiralty law (Count III). The defendants filed a motion to dismiss, which Allen opposed. The district court allowed Allen to file a First Amended Complaint naming NCLA as the defendant.

On December 14, 2015, Allen filed his First Amended Complaint against NCLA. In this Complaint, he alleged the same three counts. NCLA filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), which Allen opposed. The district court granted NCLA's motion to dismiss as to Counts I and II, but denied the motion as to Count III. The district court allowed Allen to file a Second Amended Complaint.

On April 18, 2016, Allen filed his Second Amended Complaint. In this Complaint, he alleged the same three counts, with minimal additional details for Counts I and II. NCLA again filed a motion to dismiss Counts I and II for failure to state a claim pursuant to FRCP 12(b)(6), which Allen again opposed. The district court again granted NCLA's motion to dismiss Counts I and II, and allowed Allen to file a Third Amended Complaint.

On July 10, 2017, Allen filed his Third Amended Complaint, adding two new defendants, Cigna Corporation and Life Insurance Company of North America, and claiming that they violated contract law by failing to pay him insurance benefits (Count IV). Allen also alleged the same three counts from his Second Amended Complaint against NCLA, with no additional details for Counts I and II. NCLA again filed a motion to dismiss Counts I and II, emphasizing that they were identical to Counts I and II in Allen's Second Amended Complaint, which the district court had already dismissed. This time, Allen did not oppose NCLA's motion to dismiss. On October 3, 2017, the district court again granted NCLA's motion to dismiss Counts I and II, noting both that Allen did not oppose the motion and that his "Third Amended Complaint alleges the exact same facts and claims at Counts I and II as his Second Amended Complaint." The following day, after Allen and NCLA informed the district court that they had settled Count III, the district court ordered them to submit to the court a stipulated dismissal of that count. The parties did so, and

the district court approved the stipulated dismissal on November 6, 2017. Allen then filed a notice of appeal.

This lawsuit, now containing only Count IV against Cigna Corporation and Life Insurance Company of America, remained active on the district court's docket until the parties submitted a stipulated dismissal of Count IV on January 26, 2018, and the district court approved that stipulated dismissal on January 29, 2018. Allen did not file a new notice of appeal after the dismissal of this remaining count.

On appeal, Allen argues that the district court erred by dismissing Counts I and II against NCLA. Allen does not challenge the stipulated dismissals of Count III against NCLA and Count IV against Cigna Corporation and Life Insurance Company of America. Cigna Corporation and Life Insurance Company of America are not parties to this appeal.

## II.

## A.

Neither party has challenged our jurisdiction in this case, but we have "an independent obligation to police our own jurisdiction." *Bonner v. Perry*, 564 F.3d 424, 426 (6th Cir. 2009) (quoting *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 665 (6th Cir. 2001)). We generally have jurisdiction "only over appeals from final decisions of a district court." *See id.* at 426–27 (citing 28 U.S.C. § 1291). And these appeals "'may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4'" of the Federal Rules of Appellate Procedure. *Id.* at 427 (quoting Fed. R. App. P. 3(a)(1)).

A notice of appeal must be filed "'within 30 days after the judgment or order appealed from is entered.'" *Id.* (quoting Fed. R. App. P. 4(a)(1)(A)). In most cases, a judgment is not entered until it is "'set out in a separate document'" or until "'150 days have run from the entry

[of the judgment or order] in the civil docket.'" *See id.* (quoting Fed. R. Civ. P. 58(c)(2)). But

"'[a] notice of appeal filed after the court announces a decision or order—but before the entry of

the judgment or order—is treated as filed on the date of and after the entry.'" *Id.* (quoting Fed.

R. App. P. 4(a)(2)). In litigation involving multiple claims or multiple parties, a district court's

order resolving fewer than all the claims against fewer than all the parties is generally not

appealable unless the district court expressly certifies that there is no just reason for delay. *See*

Fed. R. Civ. P. 54(b); *Gillis v. U.S. Dep't of Health and Human Servs.*, 759 F.2d 565, 568 (6th Cir.

1985).

In this case, at the time that Allen filed his notice of appeal regarding NCLA, the dismissal

of Counts I and II against NCLA was not yet appealable, since Cigna Corporation and Life

Insurance Company of America remained parties to the action, there was no final judgment in the

action, and no Federal Rule of Civil Procedure 54(b) order had been entered. *See Bonner*, 564

F.3d at 427–28. Allen's notice of appeal was therefore premature. *See id.* at 428. But the district

court dismissed the remaining parties, Cigna Corporation and Life Insurance Company of

America, from the action on January 29, 2018, making the district court's earlier dismissal of

Counts I and II against NCLA reviewable once a final judgment for purposes of appeal was

entered. *See id.* Because the January 29, 2018 order does not comply with the separate-document

requirement of Federal Rule of Civil Procedure 58(a), the final judgment for purposes of appeal

was not entered until 150 days after the entry of that order—June 28, 2018. *See id.* Since it is past

June 28, 2018, there is now a final judgment for purposes of appeal.

Premature notices of appeal may be treated as entered on the day that the final judgment is

entered, *see* Fed. R. App. P. 4(a)(2), and because we have before held in circumstances such as

these that premature notices of appeal vest this court with jurisdiction when the judgment becomes

final prior to disposition of the appeal, *see Gillis*, 759 F.2d at 569; *Bonner*, 564 F.3d at 428–29; *accord FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 277 (1991), we proceed to the merits of Allen's case.

**B.**

NCLA first argues that Allen waived his right to appeal the district court's dismissal of his Third Amended Complaint because he failed to oppose NCLA's motion to dismiss that complaint. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997). And we have several times applied this waiver rule to plaintiffs who failed to oppose defendants' motions to dismiss. *See Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (collecting cases).

In response, Allen points out that he did oppose NCLA's motion to dismiss Counts I and II of his Second Amended Complaint. He argues that he included Counts I and II in his Third Amended Complaint to "preserve those claims and defeat[] any later argument . . . that they had been abandoned and waived." When NCLA moved to dismiss Counts I and II of Allen's Third Amended Complaint, a motion Allen thought was "unnecessary," he saw "no need for further argument" since the district court had already dismissed identical versions of those counts.

Allen could have avoided this issue altogether had he opposed NCLA's motion to dismiss Counts I and II of his Third Amended Complaint. Still, we are aware of no case in which we have applied our waiver rule in circumstances like these where a plaintiff initially opposed a defendant's motion to dismiss but later failed to oppose a motion to dismiss identical claims while negotiating a settlement of the remaining claim against the defendant in an attempt to secure a final and appealable judgment. And applying our waiver rule here would not further the goals it is designed

to promote: "eas[ing] appellate review" by allowing district courts to decide issues first and "ensur[ing] fairness to litigants by preventing surprise issues from appearing on appeal." *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Here, Allen opposed NCLA's motion to dismiss his Second Amended Complaint and argued in the district court that that complaint alleged sufficient facts to state a claim upon which relief could be granted. The district court decided this issue. And this issue comes as no surprise to NCLA—it is an issue Allen and NCLA have litigated over the course of multiple motions to dismiss and is the only issue on appeal. We will therefore consider Allen's appeal on the merits.

## C.

We review de novo a district court's dismissal of a complaint for failure to state a claim pursuant to FRCP 12(b)(6). *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). To survive a motion to dismiss under FRCP 12(b)(6), a complaint must contain direct or inferential factual allegations respecting all material elements of a claim. *Id.* "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not" defeat a motion to dismiss. *Id.*

## 1.

In Count I, Allen alleged that NCLA was negligent under the Jones Act. The Jones Act "authorizes seamen to maintain negligence actions for personal injury suffered in the course of employment." *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 907 (6th Cir. 2006). "Proof of negligence (duty and breach) is essential to recovery under the Jones Act." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir. 2001). The Jones Act requires ship owners to provide safe workplaces for their seamen. *Churchwell*, 444 F.3d at 907. Ship owners breach this duty if they neglect to cure or eliminate dangers about which they or their agents knew or should have known. *Id.* "It is a fundamental principle that, under the Jones Act, an employer

'must have notice and the opportunity to correct an unsafe condition before liability will attach.'" *Perkins*, 246 F.3d at 599 (quoting *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993)). "'There must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have known of the unsafe condition.'" *Id.* (quoting *Havens*, 996 F.2d at 218)). "Whether an employer is negligent is determined under the 'ordinary prudence' standard normally applicable in negligence cases." *Id.* at 598.

In his Second and Third Amended Complaints, Allen alleged a paucity of facts and a plethora of conclusory allegations and legal conclusions masquerading as allegations of fact. His factual allegations, hidden amongst two pages of the latter, were that he was hired for one position, but that upon arrival in Hawaii, NCLA assigned him to a more demanding position and that on his first day in this new position, he struck his knee twice on the leg of a steel transfer table in the galley of the ship while lifting items onto the table.

To survive a motion to dismiss, Allen was required to provide direct or inferential factual allegations respecting all material elements of his Jones Act negligence claim. *See Mezibov*, 411 F.3d at 716. The district court dismissed Count I because "without some factual basis for the allegation that an elevated table in a galley was defective or that [NCLA] had notice of its dangers, [Allen]'s claim for Jones Act negligence fails as a matter of law." Allen had "not asserted facts that any instrumentality he was required to use was defective nor [had] he asserted he was instructed to perform his duties in an unsafe manner." Finally, the district court noted that if it accepted Allen's conclusory allegation that NCLA "had constructive notice of the dangerous condition," this "would render the notice requirement meaningless."

We agree with the district court. "Manifestly, a presumption of negligence does not arise upon mere evidence of an injury sustained." *Cincinnati, N.O. & T.P. Ry. Co. v. South Fork Coal*

*Co.*, 139 F. 528, 533 (6th Cir. 1905). Even a lengthy recitation of conclusory allegations and legal conclusions presented as facts will not defeat a motion to dismiss. *See id.* As the district court noted, Allen alleged no *facts* showing what was dangerous about a steel table in a ship galley, elevated or otherwise. Allen did not allege that any other seaman had been injured by lifting items onto the table; neither did he allege any *facts* to support his conclusory allegation that NCLA negligently failed to discover and correct a "latent and/or patent defect[] and/or dangerous condition[]" relating to the steel table. Because Allen did not allege facts necessary to support his Jones Act negligence claim, the district court did not err by dismissing it.

**2.**

In Count II, Allen alleged that NCLA violated the seaworthiness doctrine under general maritime law. "Under the seaworthiness doctrine, there is an absolute duty to maintain a seaworthy ship, the breach of which imposes liability without fault." *Perkins*, 246 F.3d at 602. "A ship[ ]owner has an obligation to 'furnish a vessel and appurtenances reasonably fit for their intended use.'" *Id.* (quoting *Havens*, 996 F.2d at 217). But "a vessel need not be 'free from all possibility of mishap, for the seaworthiness of a ship is a relative concept, dependent in each instance upon the circumstances.'" *Id.* (quoting *Brown v. Dravo Corp.*, 258 F.2d 704, 706 (3d Cir. 1958)). Ships may be unseaworthy if they have defective or missing gear, or have an unfit or understaffed crew. *See Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 383 (6th Cir. 2008). Ships may also be unseaworthy where the crew is instructed to use unsafe work methods. *Id.*

Allen's unseaworthiness claim relied on the same factual allegations as those on which his Jones Act negligence claim relied. The district court dismissed Allen's unseaworthiness claim because Allen failed to allege "plausible facts demonstrating defective equipment, inadequate staffing[,] or unsafe instruction."

Once again, we agree with the district court. To survive a motion to dismiss, Allen was required to provide direct or inferential factual allegations respecting all material elements of his unseaworthiness claim. *See Mezibov*, 411 F.3d at 716. Allen added no new factual allegations for this claim. Instead, he reiterated the same conclusory allegations and legal conclusions masquerading as factual conclusions on which he relied for his Jones Act negligence claim, along with two additional paragraphs of conclusory allegations and legal conclusions cast as factual conclusions. And once again, these may not defeat a motion to dismiss. *See id.* As the district court noted, Allen alleged no *facts* which demonstrated that the steel table was defective or that the *Pride of America*'s crew was unfit or understaffed. In support of his unsafe work methods theory, Allen alleged that he "was required to carry a large, hard-to-handle[,] and excessively heavy tub of silverware from the dishwasher and lift it onto an elevated steel transfer table, within strict and unrealistic time constraints." As the district court noted, "[a]ll jobs have time constraints," but Allen had failed to allege any *facts* demonstrating "why or how his time constraints were unreasonable." And although he alleged that the tub of silverware was heavy and hard-to-handle, "he does not say he could not lift it without assistance nor does he allege he required or asked for assistance to lift the tub." Finally, although *Taylor* requires that an unseaworthiness claim must allege that the seaman was "instructed" to use unsafe work methods, *see* 517 F.3d at 383, Allen never alleged that he was instructed to lift in an unsafe way. In fact, Allen says that "he was given no training" for his galley duties at all. Because Allen did not allege facts necessary to support his unseaworthiness claim, the district court did not err by dismissing it.

**3.**

The district court gave Allen ample opportunity to cure the factual insufficiency of his complaints. It twice dismissed Allen's Jones Act negligence and unseaworthiness claims for

failing to state a claim, but twice allowed Allen to file an amended complaint with sufficient facts to support his claims. Allen's first attempt to add additional facts fell short, and he did not even attempt to add additional facts the second time. Because Allen failed to provide sufficient facts to support his claims, despite ample opportunity to do so, the district court did not err by dismissing those claims.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

No. 17-4198
*Marvin Allen v. NCL America LLC, et al.*

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

I dissent from Part II.C.1, regarding Allen's Jones Act claim, and Part II.C.2, regarding Allen's seaworthiness-doctrine claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]e *do not require heightened fact pleading of specifics*, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "We must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and *draw all reasonable inferences in the plaintiff's favor*." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (emphasis added).

The majority improperly applies this standard by requiring heightened fact pleading of specifics and examining the complaint in a light most favorable to defendant NCL. For instance, the majority rebuts Allen's contention that he had to meet strict and unrealistic time constraints with the argument that "[a]ll jobs have time constraints." *See* Maj. Op. at 10 (alteration in original) (quoting district court opinion). Additionally, "although [Allen] alleged that the tub of silverware was heavy and hard-to-handle, 'he does not say he could not lift it without assistance nor does he allege he required or asked for assistance to lift the tub.'" *Id.* at 10 (quoting district court opinion). The majority also focuses on whether Allen has pleaded that the table had a defect; by doing this, the majority ignores Allen's other breach arguments—that NCL instructed Allen to use unsafe work methods, that NCL failed to train Allen, and that NCL failed to supervise Allen. *Id.* at 8–9.

A review of the actual language in the complaint and the legal elements that Allen needs to meet shows that the majority incorrectly concludes that Allen has not adequately pleaded his claims.

## A.  Jones Act

"It is a well-settled principle of law that seamen are 'emphatically the wards of the admiralty.'" *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 597 (6th Cir. 2001) (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354–55 (1995)). "The paternal regard of the Courts and Congress for seamen has, for the most part, grown out of the peculiar conditions of their employment." *Id.* at 597–98 (quoting *Paul v. United States*, 205 F.2d 38, 42 (3d Cir. 1953)). "It is for this reason that remedial legislation [enacted] for the benefit and protection of seamen has been liberally construed to attain that end." *Id.* at 598 (alteration in original) (quoting *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431 (1939)). The Jones Act encompasses these goals, and it allows a seaman to bring an action against his employer for negligence. *Id.* The intent of the Jones Act was "to expand—not limit—protections for seamen, and usually disallows 'the application of rules of the common law which would affect [seamen] harshly.'" *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 448 (6th Cir. 2001) (alteration in original) (quoting *Socony-Vacuum*, 305 U.S. at 431).

The issue here is whether Allen has adequately pleaded "the breach of a duty to protect against foreseeable risks of harm." *Perkins*, 246 F.3d at 599 (quoting *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 437 (4th Cir. 1999)). Allen can prove breach in several ways, including that NCL provided a piece of defective equipment, that NCL failed to cure obvious dangers, that NCL did not provide adequate training, and that NCL did not take adequate safety precautions. *Cf. Perkins*, 246 F.3d at 599–602; *Rannals*, 265 F.3d at 451–52 (concluding that weather conditions created a genuine dispute of material fact regarding whether a training center

had constructive notice that there was dangerous ice that the training center should have removed).

In his third amended complaint, Allen adequately pleaded that NCL breached its duty in at least three manners—creating an unsafe work environment, failing to train Allen properly, and failing to supervise Allen properly.

We have already examined a similar situation. *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 908 (6th Cir. 2006). When considering whether the district court's grant of summary judgment was appropriate, we stated that a "[p]laintiff ha[d] presented sufficient evidence to create a genuine issue of material fact as to each element of her Jones Act claim: (1) the kitchen was unreasonably dangerous; (2) the dangerous condition caused Plaintiff to fall; and (3) Defendants should have known about the dangerous condition." *Id.* "[T]here [was] sufficient evidence that Defendants should have been aware of the dangerous condition of their kitchen" because "[s]pills in a kitchen are reasonably foreseeable, and Defendants should know what type of equipment their kitchen contains, *i.e.*, the absence of grease mats and containers with handles." *Id.* Because of this, we concluded that "Plaintiff's Jones Act claim should have been submitted to the jury." *Id.* Our decision in *Churchwell* demonstrates the types of facts that can be sufficient to prove a Jones Act claim that is similar to the one that Allen alleges. Because Allen is facing a motion to dismiss, he needs only to show that his third amended complaint provides similar facts that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

First, Allen has pleaded enough facts to move forward on his argument that NCL created an unreasonably dangerous work environment:

> On or about May 20, 2015 Plaintiff was assigned to work in the galley and required to carry a large, hard-to-handle and excessively heavy tub of silverware from the dishwasher and lift it onto an elevated steel transfer table, within strict and unrealistic time constraints, when he was caused to strike his left knee on the exposed leg of the table, because of the manner he was required to position himself in order to lift the excessively heavy tub of silverware above chest level; Plaintiff

continued working and was caused to strike his left knee on the elevated transfer table leg, a second time while lifting a large stack of plates onto the elevated table.

R. 49 (Third Am. Compl. ¶ 8) (Page ID #494). Allen also pleaded that NCL knew or should have known that their procedures created an unsafe environment:

That Defendant NCL had actual and/or constructive knowledge that the method of work and/or procedure used in its galley, particularly the lifting of heavy and bulky tubs of dishes to an elevated position within unrealistic time constraints, was unsafe for Plaintiff and those similarly situated because the conditions had existed for a sufficient length of time that a reasonable shipowner and/or operator would have discovered them and/or that Defendant created the hazardous conditions, thus conferring constructive knowledge on Defendant;

*Id.* ¶ 9 (Page ID #496). Because Allen stated that NCL created this fast, hectic and unsafe environment, he has adequately pleaded that it was reasonably foreseeable to NCL that he would be hurt.

Second, Allen has pleaded that he did not receive adequate training prior to engaging in this hazardous work environment:

Failing to properly monitor and supervise Plaintiff's work activities and minimize, reduce or otherwise eliminate unnecessary exposure to recognized risks and hazards, such as that presented by having to lift an unwiedly and heavy tub to the elevated transfer table within unrealistic time constraints that exacerbated the hazards of the task . . .

Failing to assign Plaintiff work that was within his physical capacity, especially when his original, agreed-upon work assignment was considerably less physically rigorous and/or demanding . . .

. . . .

That Defendant NCL had actual and/or constructive knowledge that the lack of advance notice of the transfer of Plaintiff's position from "Utility Hotel" to "Utility Galley" and the lack of appropriate training provided to Plaintiff presented an unreasonable risk of danger to Plaintiff, because of the heavy physical exertion required within the unrealistic time constraints.

*Id.* (Page ID #495). Based on the language in this complaint, Allen provided "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that NCL assigned

him to a position for which he was neither hired nor trained.  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 570).

Lastly, Allen has properly pleaded that NCL failed to provide Allen with adequate

supervision:

> Failing to inspect the vessel and the galley in particular, and failing to monitor and/or observe the tasks and work performed by the crew members, and Plaintiff, Marvin Allen, in particular, to discover and correct unsafe working conditions, which Defendant knew or in the exercise of reasonable care, should have known existed on its vessel;

R. 49 (Third Am. Compl. ¶ 9) (Page ID #495).  By stating that NCL did not provide adequate

supervision to an employee who had been on the vessel for only three days and who "was a fifty-

nine (59) year-old, retired corrections officer, with no prior maritime employment and/or

experience," Allen has provided enough facts to move forward with his Jones Act claim.  *Id.* ¶ 4

(Page ID #493).

In conclusion, because "[w]e must accept the complaint's well-pleaded factual allegations

as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable

inferences in the plaintiff's favor," the majority incorrectly concludes that Allen's Jones Act claim

is inadequate.  *Luis*, 833 F.3d at 626.

**B.  Seaworthiness Doctrine**

To prevail on a claim that a vessel is unseaworthy, Allen needs to show that "the vessel

and its appurtenances are not 'reasonably fit for their intended use.'"  *Churchwell*, 44 F.3d at 904

(quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)).  "A vessel may be

unseaworthy because it contains defective gear, is missing necessary gear, or because its crew is

instructed to use unsafe work methods."  *Id.* at 904, 905 (holding that "[b]ecause reasonable people

could disagree about whether the absence of grease mats and containers with handles rendered

Plaintiff's work space unsafe, this issue should be submitted to the jury"). As previously discussed, Allen pleaded facts suggesting that NCL instructed Allen to use unsafe work methods, so he has properly pleaded this claim.

Because Allen has sufficiently pleaded his Jones Act and unseaworthiness-doctrine claims, we should reverse the district court's judgment and remand. I respectfully dissent.